# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: EpiPen Direct Purchaser Litigation | Civil No. 20-cv-00827 (ECT/JFD) |
| (This Document Applies to All Actions) | **ORDER** |

Noah Silverman, Bruce E. Gerstein, Jonathan M. Gerstein, Elena K. Chan, and Joseph Opper, Garwin Gerstein & Fisher LLP, New York, NY; David F. Sorensen, Caitlin Coslett, Andrew C. Curley, Aurelia Chaudhury, E. Michelle Drake, John Parron, and Nicholas Urban, Berger & Montague PC, Philadelphia, PA; David S. Golub and Steven Bloch, Silver Golub & Teitell LLP, Stamford, CT; Susan C. Segura and David C. Raphael, Jr., Smith Segura & Raphael, LLP, Alexandria, LA; Russell Chorush, Eric Enger, and Christopher M. First, Heim Payne & Chorush LLP, Houston, TX; Joseph T. Lukens and Peter Kohn, Faruqi & Faruqi, LLP, Philadelphia, PA; and Stuart Des Roches, Andrew Kelly, Amanda Leah Hass, Chris Letter, Dan Chiorean, Christopher Stow-Serge, and Thomas Maas, Odom & Des Roches, LLC, New Orleans, LA, for Plaintiffs Rochester Drug Co-Operative, Inc., and Dakota Drug, Inc.

Adam K. Levin, Carolyn A. DeLone, Christine A. Sifferman, Justin Bernick, Kathryn Marshall Ali, Charles A. Loughlin, Elizabeth Jose, and David M. Foster, Hogan Lovells US LLP, Washington, DC; Peter H. Walsh, Hogan Lovells US LLP, Minneapolis, MN; and Katherine Booth Wellington, Hogan Lovells US LLP, Boston, MA, for Defendants Mylan Inc. and Mylan Specialty L.P.

John W. Ursu and Isaac B. Hall, Faegre Drinker Biddle & Reath LLP, Minneapolis, MN; and Craig D Singer, Daniel M. Dockery, and Enu A. Mainigi, Williams & Connolly, LLP, Washington, DC, for Defendants CaremarkPCS Health LLC, Caremark LLC, and Caremark Rx LLC.

Donald G. Heeman, Jessica J. Nelson, and Randi J. Winter, Spencer Fane LLP, Minneapolis, MN; and Jonathan Gordon Cooper, Carolyn L. Hart, Michael John Lyle, and Eric C. Lyttle, Quinn Emanuel Urquhart & Sullivan LLP, Washington, DC, for Defendants Express Scripts Inc., and Medco Health Solutions, Inc.

Kadee Jo Anderson and Andrew Glasnovich, Stinson LLP, Minneapolis, MN; Elizabeth Broadway Brown, D. Andrew Hatchett, Jordan Elise Edwards, and Bradley Harder, Alston & Bird LLP, Atlanta, GA; and Brian D. Boone, Alston & Bird LLP, Charlotte, NC, for Defendant OptumRx Inc.

An "EpiPen" is a medical device carried by some persons with severe allergies who are at risk of a sudden attack of anaphylaxis, a life-threatening, severe, allergic reaction. (Am. Compl. ¶ 2, Dkt. No. 76.) In an emergency, a person suffering an anaphylactic attack can use an EpiPen to quickly inject themselves with a life-saving dose of epinephrine. (*Id.*) Defendants Mylan Inc. and Mylan Specialty L.P. (collectively "Mylan") sell the EpiPen, which has higher sales volume than any other Epinephrine Auto-Injector (the class of medical device to which the EpiPen belongs). (*Id.*)

In this action, Co-Lead Plaintiffs Rochester Drug Co-Operative, Inc., and Dakota Drug, Inc. (together "Plaintiffs") allege on behalf of a proposed class of pharmaceutical wholesalers that Defendants Mylan Inc. and Mylan Specialty L.P. (collectively, "Mylan"), obtained a dominant position within the market for Epinephrine Auto-Injectors, not by making a better product and selling it at a better price, but by paying bribes and kickbacks to pharmacy benefit managers ("PBM"), companies that, among other things, manage the prescription benefits of insurance companies and managed health care plans. (*Id.* ¶ 3.) Mylan is a defendant in this case, together with three groups of pharmacy benefit managers: CaremarkPCS Health LLC, Caremark LLC, and Caremark Rx LLC (collectively, "CVS Caremark"); Express Scripts Inc. and Medco Health Solutions Inc. (collectively, "Express Scripts"); and OptumRx Inc., ("OptumRx"). Plaintiffs allege that because PBMs have power to confer market share on favored products, and because Mylan bribed the PBMs to favor EpiPen, Mylan was able to raise the price of EpiPen yet keep a monopoly position in the Epinephrine Auto-Injector market. (*Id.* ¶¶ 1–10.) Plaintiffs allege that Defendants' actions violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18

2

U.S.C. § 1962(c), and that Mylan's actions also violate Section Two of the Sherman Antitrust Act, 15 U.S.C. § 2. (*Id.* ¶ 10.)

Plaintiffs now bring a Motion for Leave to File a First Amended Consolidated Class Action Complaint (Dkt. No. 161) requesting permission to make four key amendments to: (1) plead additional facts that will rejoin five of the previously dismissed parent company Defendants, including (a) CVS Health Corporation; (b) Express Scripts Holding Company; (c) United Health Group Incorporated; (d) United Healthcare Services Inc.; and (e) Optum Inc.; (2) join two additional Defendants that are affiliates of the PBM Defendants, including (a) CVS Caremark Part D Services, L.L.C.; and (b) UnitedHealthcare, Inc.; (3) plead additional facts that are connected to elements of previously pleaded state bribery law violations, as well as add new state bribery law violation claims; and (4) add a new claim for relief under Section One of the Sherman Antitrust Act, 15 U.S.C. § 1.

Defendants oppose Plaintiffs' motion and ask the Court to deny the motion almost entirely, granting only Plaintiffs' request under (2)(a) above to join one new Defendant, CVS Caremark Part D Services, L.L.C. (First Am. Consolid. Compl., Dkt. 163-2; Defs.' Mem. Opp'n at 18, Dkt. No. 170.[1])

For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion to amend.

## I.    Background

Plaintiffs filed the operative complaint on August 14, 2020 (*see* Am. Complaint) after the court consolidated two cases (Dkt. No. 70). The district court denied in substantial

---

[1] The Court will refer to Defendants' pagination rather than the federal judiciary's electronic case files ("ECF") pagination throughout this Order.

part Defendants' subsequent motions to dismiss in an Opinion and Order dated January 15, 2021 (Dkt. No. 125). However, the district court did grant, in part, Defendants' motion to dismiss six PBM parent corporation Defendants "with prejudice" because Plaintiffs failed to "allege[] a plausible basis for holding those entities liable." (*Id.* at 2.)

The Pretrial Scheduling Order (Dkt. No. 150) set a September 1, 2021 deadline for "[a]ll motions which seek to amend the pleadings." Plaintiffs filed the instant motion to amend on the last permissible day, September 1, 2021, when the parties were less than halfway through their discovery period, with approximately seven months of discovery remaining.

Plaintiffs seek to amend their complaint to add new facts and causes of action, and to rejoin previously dismissed defendants. (Pls.' Mem. Supp. at 1, Dkt. No. 162.[2]) Plaintiffs' proposed amendments are also, in part, responsive to the district court's dismissal of the PBM parent corporation Defendants. (Op. & Order at 53–54, 62.) Defendants oppose Plaintiffs' motion to amend and argue that Plaintiffs already knew the facts and legal theories their proposed First Amended Consolidated Class Action Complaint alleges when they filed their first Complaint, 18 months ago; that Plaintiffs were dilatory; and that Plaintiffs must meet a higher standard than that of Federal Rule of Civil Procedure 15 before they may add back the PBM corporate defendants that the district court previously dismissed from this case with prejudice. (*See* Fed. R. Civ. P. 15; Defs.' Mem. Opp'n at 1–2.)

---

[2] The Court will refer to Plaintiffs' pagination rather than the ECF pagination throughout this Order.

The Court will first address Defendants' argument that this Court should deny Plaintiffs' motion for undue delay and prejudice to Defendants, then will turn to Defendants' argument that a standard higher than Rule 15's applies to Plaintiffs' proposal to rejoin the five previously dismissed Defendants. *See* Fed. R. Civ. P. 15. The Court will also briefly address Defendants' latent futility argument.

## II.    Federal Rule of Civil Procedure 15(a)(2)'s Liberal Amendment Standard

Under Rule 15 of the Federal Rules of Civil Procedure, after 21 days have passed since service of a responsive pleading, a party "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Thus, Rule 15 is aimed at the prejudgment phase of litigation in which leave to amend "shall be freely given when justice so requires." *Id.* Regarding this liberal amendment standard, the Supreme Court has held that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

While "plaintiffs do not have an absolute or automatic right to amend," *United States ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005) (citations omitted), the Eighth Circuit has repeatedly held that a motion to amend may be denied only "if there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013) (quoting *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008)). "[A] motion to amend should be denied on the merits 'only if it asserts clearly

frivolous claims or defenses.'" *Becker v. Univ. of Nebraska at Omaha*, 191 F.3d 904, 908
(8th Cir. 1999) (quoting *Gamma-10 Plastics, Inc. v. American President Lines, Ltd.,* 32
F.3d 1244, 1255 (8th Cir.1994), *cert. denied,* 513 U.S. 1198 (1995)).

### A.     Undue Delay

Defendants' first argument in opposing this motion is that Plaintiffs were generally
dilatory when they brought this motion at the last permissible moment. (Defs.' Mem.
Opp'n at 6.) Defendants also specifically allege that "Plaintiffs unduly delayed alleging
predicate acts and an antitrust claim that were known and available to them . . . at the very
outset of the litigation—nearly eighteen months ago." (*Id.* at 6–7.)

As noted above, "undue delay" is one factor this Court may consider in deciding the
motion to amend. In most cases, "[d]elay alone is insufficient justification for denying a
motion to amend; prejudice to the nonmovant must also be shown." *Bell v. Allstate Life
Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998); *see also RJM Sales & Mktg., Inc. v. Banfi Prod.
Corp.*, 546 F. Supp. 1368, 1379 (D. Minn. 1982) (affirming that where a party moved to
amend its pleadings within the nondispositive motion deadlines, but where evidence
suggested the party already knew the information long before, leave to amend *should still
be granted* because "[m]ere delay is not a reason in and of itself to deny leave to amend"
without "some prejudice which would result to the others if leave were to be granted"). *Id.*
(quoting *Mercantile Tr. Co. Nat'l Ass'n v. Inland Marine Products Corp.*, 542 F.2d 1010,
1012 (8th Cir. 1976) (citations omitted, emphasis added)).

There is no question that Plaintiffs delayed. The dispositive question is whether the
Court is confronted with *mere* delay (which would be no bar to the Court granting the

6

motion to amend) or with *undue* delay (which might be a bar, depending on additional circumstances). For the reasons that follow, the Court holds that this is a case of mere delay.

The general rule on the timing of a motion to amend is that motions to amend brought in sufficient time to avoid significant delays to discovery and trial readiness are regularly granted in the absence of prejudice to the opposing party. *See, e.g., Thomas v. Corwin*, 483 F.3d 516, 532 (8th Cir. 2007) (granting a motion to amend brought the final permissible day); *Andrade Garcia v. Columbia Med. Ctr. of Sherman*, 996 F. Supp. 605, 609 (E.D. Tex. 1998) (same); *Domke v. McNeil-P.P.C., Inc.*, 939 F. Supp. 849, 851 (M.D. Fla. 1996) (same). Here, Plaintiffs move for leave to file an amended complaint approximately one year and two months after filing their initial Amended Complaint on August 14, 2020 (after the court had consolidated these cases). (*See* Am. Complaint.) Plaintiffs do so on the final permissible day under the scheduling order, September 1, 2021. (Pretrial Sched. Order at 3.) The parties are roughly mid-discovery, with fact discovery due on April 1, 2022, approximately seven months after the filing of this motion. (*Id.* at 1.) The parties must be trial ready by December 15, 2023, over two years and three months from this motion's filing. (*Id.* at 5.)

### 1. Motions to Amend on the *Final Day* of a Scheduling Order Deadline

Courts have sometimes found undue delay and prejudice when a motion to amend is brought on the final day the scheduling order allows. However, generally, if the movant has not engaged in dilatory tactics, and if ample time remains in the discovery period, motions to amend brought on the final permissible day are regularly granted. *Compare Thomas*, 483 F.3d at 532 (affirming the lower court's grant of a motion to amend brought

7

on the final day allowed under the scheduling order, and denial of one brought a month later where plaintiff had not reasonably contemplated the proposed amendment in the initial motion for leave to amend), *and Andrade Garcia*, 996 F. Supp. at 609 (granting a motion to amend because the court found no undue delay, even though the party filed the motion on both the last day allowed in the scheduling order and on the day that discovery closed), *and Domke*, 939 F. Supp. at 851 (granting a motion to amend filed on the last day for filing dispositive motions, finding the party timely moved where their motion relied on facts already asserted and had engaged in no dilatory tactics), *with Neelon v. Krueger*, 303 F.R.D. 433, 434 (D. Mass. 2014) (denying plaintiff's motion to amend filed on the last day under the scheduling order where the case had been litigated for 22 months, only six weeks of discovery remained, and the party knew the information nine months prior), *and Simmons v. Just.*, 196 F.R.D. 296, 297 (W.D.N.C. 2000) (denying a motion to amend for undue delay because defendants waited nearly five months until the date of both the close of discovery and final day for dispositive motion filings).

Here, Plaintiffs' motion comes on the final day of the scheduling order deadline, but with more than half of the discovery period remaining. (*See generally* Pretrial Sched. Order.) Absent clear evidence of dilatory tactics, the Court applies Rule 15's liberal standard to find Plaintiffs' motion to amend is neither unduly delayed nor prejudicial to Defendants because it arrived on the final permissible day under the Pretrial Scheduling Order. *See* Fed. R. Civ. P. 15.

Defendants argue the motion is untimely because an amendment will prejudice them. They will have to devote additional time and resources to a potential second motion

to dismiss while parties are still undertaking discovery tasks; reassess prior discovery and conduct additional discovery, pushing out resolution of the case; issue new third-party subpoenas, further burdening those eleven parties who already responded to previous subpoenas; and wait for an entirely new Defendant, UnitedHealthcare, Inc., "to develop its arguments and defenses against Plaintiffs' claims[,]" . . . necessitating "changes to the case schedule." (Defs.' Mem. Opp'n at 9–11, 16–17.)

But as with the distinction between mere delay and undue delay, there is prejudice and there is unfair prejudice. Defendants are prejudiced in the sense that the amended complaint will saddle them with additional work, but the proposed amendment comports with Rule 15 and the cases construing it. *See* Fed. R. Civ. P. 15. Plaintiffs have met (if barely) the timing requirement of the Pretrial Scheduling Order and there is ample time left in discovery to adapt to the amended complaint. The amendment will not affect the trial ready date. Plaintiffs filed their first amended complaint promptly, three days after the Court consolidated the two predecessor cases, and so this motion for leave to file a First Amended Consolidated Class Action Complaint is the first proposed amendment of any substance. In short, nothing in the timing of this motion recommends its denial.

Defendants' argument that Plaintiffs' motion suffers from undue delay is also unconvincing considering the relevant caselaw. The fact that Defendants have already filed pretrial motions does not make Plaintiffs' motion untimely. *See Thapa v. St. Cloud Orthopedic Assocs., Ltd.*, 2020 WL 3790701, at *3 (D. Minn. July 7, 2020) (finding, where plaintiffs moved to amend within the pleading amendment deadline, that plaintiffs did not cause prejudice to the nonmoving party even though defendant had already filed pretrial

motions and would be required to file some of them anew). Likewise, Defendants' citations to *Peterson on behalf of E v. UnitedHealth Grp. Inc.*, 2019 WL 1578750 (D. Minn. Apr. 12, 2019) and *Onyewuchi v. Gonzalez*, 267 F.R.D. 417 (D.D.C. 2010) to urge the Court to find undue delay because Plaintiffs knew information and failed to bring it at an earlier time are simply inapposite here, considering the much earlier timing of the instant motion to amend. *See Peterson*, 2019 WL 1578750, at \*8, 11 (denying leave to amend when it came after more than four years of delay, including multiple rounds of summary judgment motions on threshold issues, a multiple year stay, and a review by the Eighth Circuit of the summary judgment ruling); *Onyewuchi*, 267 F.R.D. at 418, 421 (denying leave to amend sought by a *pro se* plaintiff well past the deadline for amending pleadings that would require reopening discovery that had closed two months previously). Here, Plaintiffs filed their motion mid-discovery, just within the deadline for amended pleadings, and before any appeals have gone before a higher court. Thus, caselaw favors finding no undue delay here.

Furthermore, new defendants are regularly added to actions through motions to amend. *See, e.g., Evantigroup, LLC v. Mangia Mobile, LLC*, 2012 WL 3283416, at \*1 (E.D. Mo. Aug. 10, 2012) (granting a motion to amend where, "[b]ased on information acquired through discovery, plaintiff states that there are additional entities and individuals who are related to and may share liability with defendant . . . ."). Indeed, Defendants appear resigned to such a delay because they do not oppose the portion of Plaintiffs' motion seeking to add an entirely new Defendant, CVS Caremark Part D Services, L.L.C. (Defs.' Mem. Opp'n at 2, 22.)

In sum, if there is delay here, it appears to be *mere* rather than *undue*. *Mercantile Tr. Co. Nat'l Ass'n*, 542 F.2d at 1012 ("Mere delay is not a reason in and of itself to deny leave to amend."). And even if the court had found undue delay, "[d]elay alone is insufficient justification for denying a motion to amend; prejudice to the nonmovant must also be shown." *Bell*, 160 F.3d at 454. Thus, even though Defendants argue that, should the Court grant this motion, they will have to redo past efforts and embark on new ones, the Court finds no prejudice under the cases cited above. Therefore, because the Court finds neither unfair prejudice nor undue delay, the Court finds Plaintiffs' Motion to Amend satisfies Rule 15's liberal standard. *See* Fed. R. Civ. P. 15.

### B. The Standard for Rejoining Defendants Previously Dismissed with Prejudice

Plaintiffs' proposed amended complaint rejoins five Defendants previously dismissed with prejudice by the district court, namely CVS Health Corporation, Express Scripts Holding Company, United Health Group Incorporated, United Healthcare Services Inc., and Optum Inc. (Pls.' Mem. Supp. at 4–5.) Plaintiffs originally alleged that these corporate parents made public statements about negotiating prices and rebates that amounted to "mail and wire fraud predicate acts." (Op. & Order at 54.) The district court dismissed these Defendants with prejudice after finding Plaintiffs failed to allege facts that individual personnel or management within these corporate parents of the PBM Defendants participated in the alleged kickback and bribery scheme in violation of RICO. (*Id.* at 53–54). Plaintiffs now allege facts that they say show these five previously dismissed

11

Defendants' personnel and management participated in the alleged RICO scheme. (Pls.'
Mem. Supp. at 4–5.)

Specifically, Plaintiffs allege, among other things, that: CVS Health Corporation
employees "developed and executed the deliberate strategy" for this quid pro quo and
executed it by "negotiating with Mylan for rebates and formulary placement for EpiPen"
(First Am. Consolid. Compl. ¶ 18); Express Scripts Holding Company's employees "made
formulary and tier placement recommendations for EpiPen based on Mylan's rebates and
other payments, much of which [it] retained for itself" (*id.* ¶ 25); UnitedHealth Group
Incorporated's employees "negotiated with Mylan for rebates and other payments, much
of which this defendant retained for itself, in exchange for preferential formulary placement
for EpiPen and exclusion of competing [epinephrine auto-injectors ("EAI")] products" (*id.*
¶ 30); United Healthcare Services Inc. "engaged in formulary development for EAIs,
negotiated with Mylan for the rebates for EpiPen, and made preferential formulary and tier
placement recommendations for EpiPen based on Mylan's kickbacks and bribes, much of
which this defendant retained for itself" (*id.* ¶ 31); and Optum Inc. also does business as
United Healthcare Services, Inc., and thus, its employees are alleged to have "negotiated
with Mylan for rebates and other payments, much of which this defendant retained for
itself, in exchange for preferential formulary placement for EpiPen and exclusion of
competing EAI products" (*id.* ¶¶ 30, 33).

In opposition, Defendants argue that when Plaintiffs seek to amend an order to
rejoin parties who were previously dismissed with prejudice, as is the case with the PBMs'
corporate parents here, Plaintiffs must meet a higher standard than Rule 15's. Defendants

argue that because the Plaintiffs did not meet this higher standard, the motion to amend should be denied as to the corporate defendants. (Defs.' Mem. Opp'n, Sect. II.) This "more restrictive standard" is one that Defendants infer from *Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F. 3d 1003, 1009–10 (8th Cir. 2015), a case in which the Eighth Circuit affirmed the district court's denial of a Plaintiff's motion to rejoin Defendants who had previously been dismissed with prejudice.

But an examination of *Streambend II* and the cases it in turn relied upon shows that the higher standard posited by the Defendants applies only to proposed amendments that try to revive <u>entire actions</u> that have been dismissed. That is not what happened in this case, and therefore Rule 15's liberal amendment standard still governs. *See* Fed. R. Civ. P. 15.

In *Streambend II*, the Eighth Circuit held that "[w]hen a party moves to amend a complaint after dismissal, a more restrictive standard reflecting interests of finality applies." 781 F.3d at 1010 (citations omitted). But by "after dismissal," the *Streambend II* court meant dismissal of an entire action. *In re RFC & ResCap Liquidating Tr. Litig.*, No. 13-cv-3451, 2015 WL 13733855, at *5 (D. Minn. Nov. 23, 2015) ("[W]hile it is true that those cases [i.e. *Streambend II*; *Hawks v. J.P. Morgan Chase Bank*, 591 F. 3d 1043 (8th Cir. 2010); and *Dorn v. State Bank of Stella*, 767 F. 2d 442 (8th Cir. 1985)] state that a 'different' or 'more restrictive' standard applies to a motion to amend a complaint after dismissal, they refer to dismissal of <u>entire</u> actions." (emphasis in original)). Dismissal of portions of claims rather than entire actions therefore does not invoke a more restrictive standard. *Id*.   Here, Plaintiffs are not trying to revive an entire action that has been dismissed, but only claims against several defendants who were earlier dismissed. This

Court therefore finds that Rule 15 supplies the standard for re-adding the previously dismissed corporate parents of the PBM Defendants to the First Amended Consolidated Class Action Complaint. *See* Fed. R. Civ. P. 15.

The District Court Judge dismissed Plaintiffs' claims against the six corporate parents of the PBM defendants because the Plaintiffs alleged only that the corporate parents had made "general public statements representing that PBMs lower their clients' costs by negotiating prices and rebates with their clients' interests at heart. . . . These statements alone do not seem like enough to hold the parent companies liable under RICO." (Op. & Order at 54.) Plaintiffs now allege, in the proposed First Amended Consolidated Class Action Complaint, facts that show, if true, that five of the previously dismissed corporate defendants were involved in the alleged illegal bribery and kickback scheme. (*See* First Am. Consolid. Compl. ¶¶ 25, 30–31, 33.) Under Rule 15's liberal standard, the involvement of the corporate defendants in the alleged kickback and bribery scheme has been plausibly alleged. The new allegations of the proposed amended complaint are therefore sufficient, and the amendments will be allowed. *See* Fed. R. Civ. P. 15.

That the dismissal of the corporate parent defendants was "with prejudice" does not change the result, again because the dismissal was of part of a complaint, not the entirety of an action. *See In re RFC*, 2015 WL 13733855, at *5. While there are instances where "with prejudice" functions as final within a case proceeding at the prejudgment phase of litigation, this is not such an instance. Where a plaintiff submits the same exact matter for reconsideration within the same case—without making any changes—then "with prejudice" has finality. *See, e.g., Monroe v. Ethicon, Inc.*, 2019 WL 7050130, at *1 (E.D.

Pa. Dec. 23, 2019) ("A judge's order dismissing a defendant with prejudice precludes suing the same defendant in the same case based on the same facts and theory unless the order is changed by the judge or vacated by an appellate court or a plaintiff can adduce new facts or theories warranting another look at the dismissed defendant's liability."). Here, Plaintiffs do not submit the same supporting facts against the same previously dismissed Defendants. (*See* First Am. Consolid. Compl. ¶¶ 25, 30–31, 33.) Therefore, the previous dismissal of these Defendants is not so final that the Court cannot allow Plaintiffs to rejoin them "when justice so requires." Fed. R. Civ. P. 15(a)(2).

### C.    The Futility of Rejoining Defendants Previously Dismissed with Prejudice

Finally, Defendants have not raised a futility argument. (Defs.' Mem. Opp'n at 3.) Nevertheless, Defendants contend that Plaintiffs' "few sentences of conclusory allegations [in their amended complaint] fail to remedy the shortcomings identified by the Court nearly eight months ago . . . ." (*Id.* at 16.) Because this boils down to a futility argument, the Court will briefly address it.

A motion to amend is futile when the amended pleading will not be able to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). Consequently, if this Court were to consider the adequacy of the repleaded facts about the five previously-dismissed Defendants, it would be—indirectly—ruling on the merits. A motion to dismiss under Rule 12(b)(6) is a dispositive motion that the district court properly reviews in this Circuit. D. Minn. L.R. 7.1(c)(6)(B). Therefore, this Court will allow Plaintiffs to amend, deferring to the district court's

consideration of subsequent motions to dismiss that Defendants reserve their right to bring. (Defs.' Mem. Opp'n at 17.) *See Arcaro v. City of Anoka*, 2014 WL 12605451, at *3, (D. Minn. July 16, 2014) (discussing the complications presented by the division of non-dispositive and dispositive motions within this district when addressing futility arguments). Allowing these amendments will "afford[] [Plaintiffs] an opportunity to test [their] claims on the merits" and permit the existing and new Defendants the chance to respond to these claims. *Foman*, 371 U.S. at 182. Accordingly, the Court will not recommend denial of Plaintiffs' motion for leave to amend on the grounds that the proposed amendments are futile.

In sum, this Court holds that Rule 15's liberal standard applies to Plaintiffs' motion to amend at this prejudgment phase of litigation, and that, in the absence of undue delay or resulting prejudice to Defendants, Plaintiffs' motion will be granted.

**IT IS HEREBY ORDERED THAT** Plaintiffs Rochester Drug Co-Operative, Inc., and Dakota Drug, Inc.'s Motion for Leave to File a First Amended Consolidated Class Action Complaint (Dkt. No. 161) is **GRANTED**. Plaintiffs shall promptly file their First Amended Consolidated Class Action Complaint.

Dated:  October 20, 2021              *s/ John F. Docherty*
                                      JOHN F. DOCHERTY
                                      United States Magistrate Judge