UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: EpiPen Direct Purchaser Litigation | Case No. 20-CV-827 (ECT/JFD) |
| THIS DOCUMENT RELATES TO:<br>All Actions | **ORDER** |

This matter is before the Court on Plaintiffs' Amended Motion to Compel Election of Defenses (Dkt. No. 426). The Court held a hearing on May 19, 2022, and denied the motion at the conclusion of the hearing. The Court informed the parties that a written order providing the Court's reasoning for the ruling would be issued and that the time for any appeal would run from the date of the written order.

**I.      Background**

Plaintiffs move for an order compelling Defendants to (1) identify all defenses and affirmative assertions they will raise in defense of the alleged bribery, mail fraud, or wire fraud offenses that they allege as RICO predicates; (2) disclose assertions about their state of mind that they will use to defend against Plaintiffs' claims (*i.e.*, that they acted in "good faith" or believed their conduct was lawful); and (3) for each state-of-mind assertion, elect to either (a) waive the attorney-client privilege or work product protection for documents and testimony, or (b) maintain the privilege or work-product claim and be precluded from making the assertion in the case. (Pls.' Proposed Order at 1–2, Dkt. No. 433.)

Plaintiffs submit that Defendants have put at issue since the beginning of the case Defendants' good faith, intent, and beliefs about the law. (Pls.' Mem. Supp. Mot. Compel Election of Defenses at 5, Dkt. No. 428.) Plaintiffs identify as examples several statements

in Defendants' legal memoranda. Plaintiffs quote from the PBM Defendants' memorandum of law in support of a motion to dismiss: "Plaintiffs do not—and cannot—plausibly allege that the PBMs knew they were violating bribery . . . ." (*Id.* at 5 (quoting PBM Defs.' Mem. Supp. Mot. Dismiss at 18, Dkt. No. 87).) Plaintiffs quote another sentence from the PBM Defendants' reply brief: "Plaintiffs could not plausibly allege 'corrupt intent' under 'heightened mens rea requirements imposed under the state bribery statutes.'" (*Id.* (quoting PBM Defs.' Reply at 12, Dkt. No. 108).) Plaintiffs point out similar language in Mylan's briefing. (*Id.* at 6–7.)

Plaintiffs also identify statements by Defendants in the Rule 26(f) Report that they claim put Defendants' state of mind at issue. For example, Defendants stated that Mylan paid only "rebates and fees [that are] standard in the pharmaceutical industry"; Mylan "did not knowingly and willfully pay the PBMs any 'bribes' or 'kickbacks'"; and "neither Mylan nor the PBMs had any intent to defraud anyone or to commit bribery." (*Id.* at 7 (quoting Rule 26(f) Report at 8–9, Dkt. No. 145).)

Finally, Plaintiffs observe that Defendants used language implicating good faith and belief about the law in their answers to the First Amended Consolidated Class Action Complaint. Plaintiffs point to phrases such as "bona fide," "good faith belief," and "conduct comported with generally recognized industry standards and applicable federal and state statutes and regulations." (*Id.* at 7–8 (quoting Mylan Defs.' Answer ¶ 21, Dkt. No. 422; Defs. Express Scripts & Medco's Answer ¶ 20, Dkt. No. 423; Caremark Defs.' Answer ¶ 25, Dkt. No. 424).) Plaintiffs also quote allegations and affirmative defenses invoking preemption, safe harbors, and statutory exceptions: "Plaintiffs' claims of alleged

2

violations of state bribery laws are preempted by the federal Anti-Kickback Statute . . . and the associated statutory and regulatory safe harbors"; "Plaintiffs' claims are barred . . . because the conduct that Plaintiffs challenge, including the payments they claim violate state bribery laws, are protected by state statutory and regulatory safe harbors"; and "Plaintiffs' claims are barred . . . because the conduct that Plaintiffs challenge is protected by federal and state statutory exceptions." (*Id.* at 8 (quoting, *e.g.*, Defs. Express Scripts & Medco's Answer ¶¶ 11, 12, 19).)

To obtain discovery on these arguments, statements, and allegations, Plaintiffs served in April 2021 requests for the production of documents for Defendants' "legal beliefs about the [federal antikickback statutes] and their compliance with same," safe-harbor defenses, and preemption defenses. (*See id.* at 9 (citations omitted).) Defendants raised several objections, including that the discovery requests sought information covered by the attorney-client privilege or work-product doctrine. (Express Scripts' Objs. & Resps. at 83–84, Dkt. No. 175-1; OptumRx's Objs. & Resps. at 84–86, Dkt. No. 187; Caremark Defs.' Resps. & Objs. at 80–83, Dkt. No. 195-2.) Plaintiffs followed up in August 2021 with discovery requests asking for Defendants' legal analysis relating to safe-harbor defenses and any defense based on good faith or state of mind, and Defendants again objected on the basis of privilege. (*See* Pls.' Mem. Supp. at 10.)

In November 2021, Plaintiffs asked each Defendant to choose to either (1) maintain its defenses implicating good faith, knowledge, or intent, and waive all privilege or work-product protection for documents and testimony concerning those topics; or (2) maintain their assertions of attorney-client privilege and work-product protection but waive any right

3

to argue good faith, knowledge, or intent in defending the case. (Pls.' Mem. at 11 (citing Silverman Decl. Exs. 1–4, Dkt. Nos. 429-1–4).) Defendants declined to do so, stating they had not waived privilege by merely making affirmative assertions about their state of mind and had not invoked the advice of counsel as part of their defenses. (Silverman Decl. Ex. 8, Dkt. No. 429-8.) Defendants also posited that Plaintiffs, not Defendants, bear the burden to prove intent with respect to any violation of antikickback statutes or state bribery laws. (*Id.*)

> Plaintiffs now ask the Court to compel each Defendant to formally choose to either
>
> (a) raise defenses that involve affirmative assertions that they acted in "good faith," had no reason to believe that their conduct violated bribery or kickback laws, or believed their conduct was lawful or protected by a safe-harbor exception, and thereby waive any and all privilege and work-product claims regarding such topics, or
>
> (b) maintain their assertions of attorney-client privilege, attorney work-product or other privilege claims regarding their knowledge and understanding of the law, and thereby forego, in defending this case, making assertions regarding their good faith and/or knowledge or understanding of the law.

(Pls.' Mem. Supp. at 4.) Plaintiffs also ask the Court to compel Defendants to identify at this time which safe harbor defenses they plan to assert regarding the bribery statutes. (*Id.*) The relief described in Plaintiffs' proposed order goes even further:

> 1. Each Defendant is ORDERED to identify and disclose to Plaintiffs, within 14 days of this Order, all defenses and affirmative assertions that it will raise in defense of the alleged bribery or mail/wire fraud offenses Plaintiffs have pled as RICO predicates. No Defendant may hereinafter raise or argue any defense or affirmative assertion not identified in accordance with this Order.
>
> 2. Each Defendant's disclosure shall include each assertion about its state of mind that it will use to defend this case, including but not limited to

4

assertions that it acted in "good faith," did not form the requisite intent to commit the alleged bribery or mail/wire fraud offense, had no reason to believe that its conduct violated bribery or mail/wire fraud laws, or believed its conduct was lawful or protected by a "safe harbor" or other exception.

      3. For each assertion each Defendant identifies and discloses in response to No. 2 above, the Defendant must elect to either:

    (a) waive any attorney-client or other privilege and work-product claims over documents or testimony regarding or relating to the assertion; or

    (b) maintain their privilege and attorney work-product claims, and be precluded from making the assertion hereafter in this litigation.

(Pls.' Proposed Order.) Plaintiffs' counsel acknowledged at the hearing that the relief described in the proposed order was "overbroad." (Hr'g Tr. at 7, Dkt. No. 458.)

Defendants oppose the motion. They argue that the motion is procedurally improper and substantively wrong; that discovery is ongoing, and they have not yet settled on their defenses; and that the relief sought is overbroad. (Defs.' Mem. Opp'n Mot. Compel at 2, Dkt. No. 443.)

**II.  Discussion**

    **A.  Implied Waiver of Privilege or Work-Product Protection**

Plaintiffs argue that if a party "makes affirmative assertions regarding its state of mind (*e.g.*, a good faith belief, lack of knowledge or intent)" or asserts that "its conduct complied with the law," then the party has placed its legal analysis at issue and waived the attorney-client privilege by implication. (Pls.' Mem. Supp. at 2, 16.) The Court respectfully disagrees. If that were so, privilege would be waived when, for example, a litigant accused of defamation asserted a belief that a statement was true, or a litigant alleged a good-faith defense. "A party does not lose the privilege to protect attorney client communications

5

from disclosure in discovery when his or her state of mind is put in issue in the action." *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994).

Although Plaintiffs devote much of their memorandum to the question of an implied privilege waiver, they are not asking the Court to determine at this time whether any privilege or work-product protection has been waived. (*See* Pls.' Mem. Supp. at 5.) Rather, Plaintiffs ask the Court to find there are sufficient potential privilege issues at stake to pin down Defendants' defenses now. (Pls.' Mem. Supp. at 19.) After Defendants identify their exact defenses, Plaintiffs propose, the Court can determine whether a privilege has been waived, the scope of any such waiver, and what discovery should be produced. (Pls.' Mem. Supp. at 5, 19–20.)

Although Plaintiffs are not seeking a decision on implied waiver through the present motion, implied-waiver principles are informative to a determination whether potential privilege issues warrant requiring Defendants to elect their defenses now. "A client may waive the protection of the attorney-client privilege either expressly or by implication." *Sedco Int'l, S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982). "Courts have found waiver by implication when a client testifies concerning portions of the attorney-client communication, . . . places the attorney-client relationship directly at issue, . . . [or] asserts reliance on an attorney's advice as an element of a claim or defense." *Id.* (citations omitted).[1]

---

[1] *Sedco* cited *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975)—on which Plaintiffs place great importance—for the reliance-on-counsel's-advice example.

6

Plaintiffs submit the privilege may be waived in other instances, too. They rely on *S.E.C. v. Welliver*, No. 11-CV-3076 (RHK/SER), 2012 WL 8015672 (D. Minn. Oct. 26, 2012), as support for their position that privileged information is put at issue, and an implied waiver occurs, when a party makes affirmative assertions regarding its state of mind. (Pls.' Mem. Supp. at 16.) In *Welliver*, the defendants expressly asserted a reliance-on-counsel defense in their original answer. 2012 WL 8015672, at *3. The defendants then inadvertently produced in discovery numerous emails with their attorney regarding an agreement that was central to the case. *Id.* at *2. The defendants later amended their answer to delete the references to reliance on counsel, and they demanded the return of the inadvertently produced documents. *Id.* at *3. The *Welliver* court determined that the defendants' conduct warranted a limited waiver of privilege under Federal Rule of Evidence 502, but not a broader, subject-matter waiver. *Id.* at *5.

The court then considered whether privilege had been waived broadly by implication. *Id.* at *8. Necessarily informed by the procedural history of the case, the court stated that "fairness" required a privilege waiver. *Id.* The court first found that the defendants' attorney's "input undoubtedly influenced Defendants' understanding of the law and the legality of their actions." *Id.* at *9. The attorney's emails and other documents provided with the motion supported a finding that the attorney's advice "shaped Defendants' understanding of their legal rights and obligations with respect to the drafting of the agreements." *Id.* Although the defendants had deleted the reliance-on-counsel allegations from their answer, allegations that the defendants "did not act knowingly," "acted in good faith," and lacked "scienter" remained. *Id.* The court found that "these

7

remaining defenses necessarily revolve around Defendants' knowledge of the law and the legality of their actions, as well as the basis for their understanding of both." *Id.* The court concluded that the defendants' attorney "was among the seeming choir of professionals from whom Defendants sought and received advice. Defendants cannot simply omit overt reference to a reliance on counsel defense to avoid . . . waiver." *Id.* "Thus, despite the Amended Answer, Defendants[] have voluntarily injected the advice they received from [the attorney] into this dispute and placed it at issue." *Id.* at *10.

Aside from the distinction that this Court has not been asked to decide now whether a privilege has been waived, there are several other key distinctions between this case and *Welliver*. First, a reliance-of-counsel defense was expressly asserted in the original answer filed in *Welliver*, which that court was well aware of and mentioned several times. The same is not true here; Defendants did not previously assert a reliance-on-counsel defense and then attempt to un-ring the bell. Second, the *Welliver* defendants deleted the reliance-on-counsel references after inadvertently producing emails that showed they had relied on the advice of their attorney. Nothing like that occurred here. Third, it is significant that the *Welliver* court could not base a full subject-matter privilege waiver on the inadvertently produced emails. To find a full waiver, the *Welliver* court had to take a different route. Reinforced by the procedural history of that case—particularly the originally asserted reliance-of-counsel defenses and the inadvertently produced emails between defendants and their lawyer—the court determined the "good faith," "knowledge," and "scienter" allegations necessarily involved the advice of counsel. No such procedural predicament exists here.

8

In sum, *Welliver* was decided on a very unique and narrow set of facts. To the extent Plaintiffs argue that *Welliver* supports their request to compel Defendants to elect their defenses at this time, the Court declines to extend *Welliver* to the circumstances of this case.

Plaintiffs also rely on cite *Escamilla v. SMS Holdings Corp.*, No. CV 09-2120 (ADM/JSM), 2011 WL 13243580 (D. Minn. June 28, 2011), for the proposition that a privilege waiver may occur by implication. The *Escamilla* court determined that asserting an *Ellerth/Faragher* defense in an employment action (where the employer must show it investigated a complaint and took remedial action) waived any privilege or work product protection applicable to communications concerning the investigation and remedial action. *Id.* at *23–25. *Escamilla* is easily distinguishable because the Defendants in this case have not raised a defense that necessarily waives privilege, nor have they identified privileged communications on which they relied, or intend to rely, but are withholding. To the extent Plaintiffs suggest that *Escamilla* should be extended to support their request to compel Defendants to elect their defenses at this time, the Court declines to do so.

Plaintiffs' other primary authority on this issue, *Miller v. Pharmacia Corp.*, No. 4:04CV981 RWS, 2006 WL 1343526 (E.D. Mo. May 16, 2006), is distinguishable for two reasons. First, the *Miller* court found a waiver of privilege before ordering discovery. *Id.* at *4. Second, privileged information was squarely at issue because the plaintiff had voluntarily injected an issue involving privileged communications into the case. *Id. Miller* does not support Plaintiff's request to compel Defendants to elect their defenses now.

9

B.     **Procedural Considerations**

Defendants argue that Plaintiffs' motion is improper because there is no case or rule providing a procedural vehicle for the relief they request: to compel Defendants to elect defenses. (Defs.' Mem. Opp'n at 4.) The Court has broad discretion in case management and scheduling. *See* D. Minn. LR 16.1(a); *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery."). Accordingly, the Court does not doubt its authority to order Defendants to elect their defenses by a certain date, if warranted.

*Medtronic, Inc. v. Intermedics, Inc.*, 162 F.R.D. 133 (D. Minn. 1995), provides an example of a court's authority to order the kind of relief Plaintiffs seek. There, the court ordered the defendant to advise the plaintiff "whether it intend[ed] to rely on extrinsic evidence to support its interpretation of the [a]greement," and, if so, "then the privilege has been waived" and the defendant must produce the supporting privileged documents. *Id.* at 135. Factually, *Medtronic* is different from the present case, because the *Medtronic* parties agreed that the only people with extrinsic knowledge of the agreement were lawyers. *Id.* Thus, if there were extrinsic evidence, it would be privileged. *Id.* Here, by contrast, it is neither agreed-to nor apparent that Defendants' state-of-mind allegations or affirmative defenses must implicate privilege. Thus, while *Medtronic* serves as an example of a court's authority to require a party to disclose its intent to rely on privileged communications by a certain date, it does not convince the Court to do so here.

*In re UnitedHealth Group Inc. PSLRA Litigation*, No. CV 06-1691 (JMR/FLN), 2008 WL 11350049, at *1 (D. Minn. June 4, 2008), was decided on a motion to compel

10

discovery in response to an interrogatory. In that case, the plaintiff served an interrogatory asking the defendant to disclose whether it would rely on an advice-of-counsel defense. *Id.* The court ordered the defendant to answer the interrogatory because the defendant said repeatedly in litigation that it had relied on the "legal department." *Id.* The court held that assertion to be the equivalent of a reliance-on-counsel defense and found an implied waiver of the attorney-client privilege. *Id.* Though *UnitedHealth Group* is distinguishable both factually and procedurally, it too demonstrates that a court has the authority to order a party to disclose whether it will rely on an advice-of-counsel defense.

### C. Whether Defendants Should Elect Their Defenses Now

The Court now turns to whether Defendants should be required to elect their defenses at this time, and concludes they should not, for the following reasons.

First, Defendants have not expressly or impliedly waived privilege or work-product protection through their arguments made in legal memoranda, statements in the Rule 26(f) Report, or allegations or affirmative defenses in their answers. Arguments made in legal memoranda about whether Plaintiffs plausibly alleged knowledge or intent were merely legal arguments about the sufficiency of allegations. Such arguments do not trigger a privilege waiver. Furthermore, Defendants' statements about industry standards, knowledge, willfulness, and intent in the Rule 26(f) Report were simply statements about the positions Defendants have taken in this litigation. Defendants neither stated expressly nor implied that they relied on counsel's advice in paying rebates or fees, meeting industry standards, or engaging in any other conduct. Similarly, language in Defendants' amended answers like "bona fide" and "good faith," and allegations that conduct was legal or met

11

industry standards, did not implicitly place legal analysis or advice at issue, because in the context of the answers the language was no more than a denial of wrongdoing. *See Shukh v. Seagate Tech., LLC*, 848 F. Supp. 2d 987, 993 (D. Minn. 2011). Denying liability or asserting an affirmative defense that has a legal basis does not necessarily put legal advice at issue.

Second, Plaintiffs argue that Defendants should elect their defenses now to give Plaintiffs fair notice. Plaintiffs cite Rule 8, which requires a defendant to "state in short and plain terms its defenses to each claim." Fed. R. Civ. P. 8(b)(1)(A). Here, Defendants have asserted their defenses in short and plain terms in their answers and therefore have given Plaintiffs fair notice of their defenses. Significantly, Rule 8 also allows a defendant to plead inconsistent defenses, as well as defenses in the alternative. Fed. R. Civ. P. 8(d)(2), (3). Thus, to the extent Defendants' safe-harbor and state-of-mind defenses could be considered inconsistent or based on alternate theories, they are expressly permitted by Rule 8.[2]

Third, Plaintiffs contend that Defendants must elect their defenses now so that the parties can focus discovery. This reason has some merit, but so does Defendants' response that (1) discovery is ongoing, and (2) Defendants cannot know all of their defenses until they know all of Plaintiffs' positions and arguments. Relatedly, Plaintiffs warn that

---

[2] At the hearing on the motion to compel, Plaintiffs described a set of defenses, including the safe-harbor defenses, that might not involve privilege issues but about which Plaintiffs want more detail so to focus future discovery. (Hr'g Tr. at 7, 9.) Plaintiffs explained they sent several letters asking which safe harbors Defendants were relying on, but Defendants refused to say. (*Id.* at 10.) It is not clear whether Plaintiffs propounded a discovery request or exhausted the meet-and-confer process on this set of defenses, however, nor did Plaintiffs move to compel a response to any particular discovery request. Thus, this Order is limited to the set of defenses involving privilege issues.

Defendants could be foreclosed from asserting an affirmative defense if they do not timely provide discovery on it. That may be, but it will be Defendants, not Plaintiffs, who bear the risk if an affirmative defense is not identified in time for discovery to be provided.

Fourth and finally, Plaintiffs direct the Court to the District of Minnesota's Rule 26(f) scheduling template for patent cases, which includes an interim date for a party to decide whether to waive the attorney-client privilege on topics related to willful infringement. This is not a patent case, however, and Plaintiffs have not persuaded the Court that similar justifications apply. Notably, the Court's template for non-patent cases does not contain a deadline for deciding whether to waive privilege.

## III.  Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiffs' Amended Motion to Compel Election of Defenses (Dkt. No. 426) is **DENIED**.

Date:  July 5, 2022            *s/ John F. Docherty*
                               JOHN F. DOCHERTY
                               United States Magistrate Judge