## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: EpiPen Direct Purchaser Litigation | Case No. 20-cv-00827 (ECT/JFD)<br><br>**NOTICE OF SUBPOENA** |

Please take notice that:

      Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendants Mylan Inc. and Mylan Specialty L.P. ("Mylan Defendants") will serve the attached subpoena on Aetna, Inc., requesting that it produce the specified documents and things for inspection and copying, as set forth in Schedule A to the subpoena, at the time and location noticed herein.  Mylan Defendants will include the Protective Order and Order on Protocol for Production of Documents along with the subpoena.

1

Dated: September 29, 2022                    LATHROP GPM LLP

                                            By:   /s/ *Carrie E. Josserand*
                                                  Brian C. Fries (MO #40830)
                                                  (Admitted *pro hac vice*)
                                                  Carrie E. Josserand (MO #50692)
                                                  (Admitted *pro hac vice*)
                                                  2345 Grand Boulevard, Suite 2200
                                                  Kansas City, Missouri 64108-2618
                                                  Telephone: (816) 292-2000
                                                  Telecopier: (816) 292-2001
                                                  Brian.Fries@lathropgpm.com
                                                  carrie.josserand@lathropgpm.com

                                                  Jason T. Johnson (MN #0399974)
                                                  LATHROP GPM LLP
                                                  500 IDS Center
                                                  80 South 8th Street
                                                  Minneapolis, Minnesota 55402
                                                  Telephone: (612) 632-3000
                                                  Telecopier: (612) 632-4000
                                                  Jason.Johnson@lathropgpm.com

                                                  COUNSEL FOR MYLAN
                                                  DEFENDANTS

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

| | |
|---|---|
| In re: EpiPen Direct Purchaser Litigation | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  20-cv-00827-ECT-JFD |
| | ) |
| _____ | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                    Aetna, Inc.
                     151 Farmington Avenue, Hartford, CT 06156
_____
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:   See attached Schedule A.

| Place: Regus Business Center | Date and Time: |
|---|---|
| Attn: Hogan Lovells (Adam Levin/Briana Black) 360 Bloomfield Avenue, Suite 301, Windsor, CT 06095 | 10/31/2022 5:00 pm |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    10/03/2022

|  CLERK OF COURT | |
|---|---|
| | OR |
| _____ | /s/ Carrie Josserand |
| *Signature of Clerk or Deputy Clerk* | _____ |
| | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Mylan Inc. and
Mylan Specialty L.P. _____ , who issues or requests this subpoena, are:
Carrie Josserand, LATHROP GPM LLP, 2345 Grand Blvd., Suite 2200, Kansas City, MO 64108
Carrie.Josserand@lathropgpm.com, (816) 292-2000

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   20-cv-00827-ECT-JFD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A
### (Aetna, Inc.)

In addition to the definitions and instructions set forth in Rule 45 of the Federal Rules of Civil Procedure and any applicable instructions in the Federal Rules of Civil Procedure or other applicable Rules or orders, the following definitions and instructions apply to each of the document requests set forth in this Subpoena, and are deemed to be incorporated in each of the requests.

## DEFINITIONS

1.      The present tense includes the past and future tenses.

2.      The terms "**and**" and "**or**" are to be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

3.      The terms "**any**" and "**all**" shall mean "any and all," and shall be construed so as to bring within the scope of the request any information that otherwise might be construed to be outside its scope.

4.      "**Action**" means all existing and future actions consolidated in *In re: EpiPen Direct Purchaser Litigation*, No. 20-cv-00827 (ECT/JFD) (D. Minn.).

5.      "**AWP**" means average wholesale price.

6.      "**Communication**" means and includes any transmission or exchange of information between two or more persons, whether orally or in writing, and including but not limited to any conversation or discussion by means of letter, note, memorandum, telephone, telegraph, telex, telecopy, fax transmission, cable, email, or any other medium.

7.      "**Complaint**" means the operative complaint in this Action. As of the date of service of these requests, the operative complaint is the First Amended Consolidated Class Action Complaint filed on October 20, 2021 (Dkt. No. 271).

8.      "**Document**" means the original and all non-identical copies of any handwritten,

1

printed, typed, recorded, graphic, or photographic material of any kind and nature, including all drafts thereof and all mechanical or electronic sound recordings or transcripts thereof, however produced or reproduced, and including but not limited to accounting materials, accounts, agreements, analyses, appointment books, books of account, calendars, catalogs, checks, computer data, computer disks, computer generated or stored information, computer programming materials, contracts, correspondence, date books, diaries, diskettes, drawings, electronic-mail ("e-mail") messages, text messages, instant messages, faxes, guidelines, instructions, inter-office communications, invoices, ledgers, letters, licenses, logs, manuals, memoranda, metadata, microfilm, minutes, notes, opinions, payments, plans, receipts, records, regulations, reports, sound recordings, statements, studies, surveys, telegrams, telexes, timesheets, vouchers, word processing materials (however stored or maintained) and working papers, and all other means by which information is stored for retrieval in fixed form.

9.     "**EpiPen**" means EpiPen® Auto-Injector, EpiPen Jr® Auto-Injector, and the authorized generic versions of the same, collectively.

10.     "**Epinephrine Product**" means all forms of epinephrine used for the first-line treatment for anaphylaxis, including but not limited to auto-injector drug devices, developed or marketed for sale, or for which FDA, NDA,  or ANDA approval has been sought.  For avoidance of doubt, Epinephrine Products include EpiPen products, Adrenaclick, Auvi-Q, e-Cue, Symjepi, Twinject, the Teva generic version of EpiPen Auto-Injector, and any predecessors or successors to those products, as well as any generic products (without regard to manufacturer).

11.     "**Epinephrine Product Manufacturer**" means any entity that currently manufactures or markets or previously manufactured or marketed an Epinephrine Product, including (but not limited to) Adamis, Impax, Amneal, kaléo, Intelliject, Mylan, Sanofi, Shionogi,

2

Lineage, Greenstone, and Teva, and any of these entities' predecessors or successors in interest, parent entities, subsidiaries, or affiliates, and any past or present director, officer, employee, agent, representative, or other person acting on behalf of any of those entities.

12. "**Epinephrine Product Manufacturer Payments**" means any proposed or actual payments, remuneration, fees, funds, financial incentives, credits, rebates, discounts, or other monies: (a) related in whole or in part to any Epinephrine Product; and (b) that You or any other entity directly or indirectly offered or provided to any PBM, or that any PBM directly or indirectly sought or received from You or any other entity. It includes, without limitation, administrative fees, data sales fees, data access fees, data processing fees, health management fees, formulary management fees, clinical programming fees, manufacturer administrative fees, service fees, purchase money discounts, purchase order discounts, price concessions, access rebates, performance or utilization rebates, market share rebates, price protection or inflation protection rebates, additional rebates, formulary rebates, formulary placement fees, program fees, educational fees, research fees, promotional fees, fees charged for patient assistance, and any other type of fee, credit, concession, discount, payment, or remuneration of any kind, whether in exchange for formulary placement, for services, or for any other purpose or for no purpose. However, this definition specifically excludes any monies You or any other entity offered, provided, or paid solely due to the utilization of a drug other than EpiPen..

13. The terms "**Employee**" and "**Employees**" are defined to include both current and former employees.

14. "**Mylan**" refers to Mylan Inc., Mylan Pharmaceuticals Inc., Mylan Specialty L.P., Dey Pharma, L.P., and any predecessors or successors in interest, parent entities, subsidiaries, or affiliates, and any past or present director, officer, employee, agent, representative, or other person

3

acting on behalf of any of those entities.

15.     The term "**Person**" shall mean any natural person, corporation, and any other form of business entity, including but not limited to partnerships, joint ventures, and associations and shall include directors, officers, owners, members, employees, agents, attorneys, or anyone else acting on the person's behalf.

16.     "**PBM**" means a pharmacy benefit manager.

17.     "**Plaintiffs**" refers to Plaintiffs Dakota Drug, Inc. and Rochester Drug Co-Operative, Inc., and all others similarly situated as part of this Action, including any predecessor or successor in interest, parent entity, subsidiary, or affiliate, and any past or present director, officer, employee, agent, representative, or other person acting on their behalf.

18.     The terms "**related to**," "**relate to**," "**relating to**," and "**regarding**," mean mentioning, citing, quoting, regarding, involving, representing, constituting, discussing, reflecting, identifying, describing, referring to, containing, enumerating, evidencing, supporting, contradicting, or in any way concerning, in whole or in part, directly or indirectly.

19.     "**Third Party Payor**" refers to any private, public, or governmental entity, excluding patients, that finances or reimburses the cost of prescription drugs, including (but not limited to) insurers, health plans, health plan sponsors, Medicare, and Medicaid.

20.     "**WAC**" refers to wholesale acquisition cost.

21.     The terms "**You**" and "**Your**" shall refer to Aetna, Inc., including Aetna, Inc.'s employees, agents, representatives, and all other persons who are acting or have acted on behalf of, or who are have been subject to the direct or control of, any of the foregoing. The terms "You" and "Your" also refer to Aetna, Inc.'s former and present divisions, subdivisions, departments, parents, subsidiaries, affiliates, predecessors, and successors, whether incorporated or not and

4

doing business under any name, or other entities acting on its behalf to the extent documents or data of the foregoing that are responsive to the requests set forth below are in Aetna, Inc.'s possession, custody and control.

## INSTRUCTIONS

1.    **Timeframe**: Unless otherwise specified in a specific request, these requests seek production of responsive Documents for the period for which Plaintiffs Dakota and Rochester agreed to produce discovery, which as of now is January 1, 2009 through the present.

2.    **Responses**: Respond to each request for production by producing the requested Documents in their entirety, along with every family Document (such as any appendices, attachments, cover letters, enclosures, exhibits, and schedules), that is in Your possession, custody, or control.  If there are no Documents in Your possession, custody, or control that are responsive to a particular request for production, provide a written response stating so for each such request. Any alteration of a responsive document, including any marginal notes, handwritten notes, underlining, date stamps, received stamps, endorsed or filed stamps, drafts, revisions, modifications, and other versions of a final document is a separate and distinct document, and it must be produced.  The fact that a document is produced by another person or entity does not relieve you of the obligation to produce your copy of the same document, even if the two documents are identical in all respects.  If you claim the attorney-client privilege or any other privilege or work product protection for any document, state the factual basis for the claim of privilege, including (1) the date of the subject document or communication; (2) the identity of the author or preparer, including the author's or preparer's name, and whether they are an attorney; (3) the identities of each person who was sent, copied on, or had access to or custody of the document, including their name and whether they are an attorney; and (4) a summary of the

document's or communication's subject matter in sufficient detail to enable an evaluation of the claim of privilege.

3.     **Production**: Produce each responsive Document in accordance with the accompanying Order on Protocol for Production of Documents (ECF 157), which is attached to this subpoena. You may also designate confidential materials in accordance with the accompanying Protective Order (ECF 154).

4.     **Objections**: If You do not respond to a request for production in whole or in part based on an objection, then state the objection and the basis for the objection in writing and with particularity.  Respond to any portion of the request for production to which You do not object.

5.     **Service**: Serve all responses and productions on the undersigned attorneys via email at Brian.Fries@lathropgpm.com, Carrie.Josserand@lathropgpm.com, and Jason.Johnson@lathropgpm.com. If email is impractical, You can serve responses at the following address:

> Lathrop GPM LLP
> ATTN: Brian C. Fries
> 2345 Grand Blvd., Suite 2200
> Kansas City, MO 64108

Also, please include an executed version of the Business Records Affidavit, enclosed herewith.

6.     **Continuing Obligation**: These requests for production are continuing in nature.  If, after responding, You obtain or become aware of any additional responsive Document, then produce that Document promptly, as required by Federal Rule of Civil Procedure 26(e).

## REQUESTS FOR DOCUMENTS

1.     All Documents You produced to any party in this Action or the litigation styled *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices, & Antitrust Litigation*, MDL

6

No. 2785, in response to a subpoena served on You, whether now or in the future, or that you otherwise submitted.  For avoidance of doubt, this includes a copy of all affidavits or declarations, including drafts and exhibits thereto, that Your current or former employees created in connection with either litigation.

2.      All Documents You provided to the U.S. Department of Justice, Federal Trade Commission, or any other local, state, or federal governmental or regulatory agency concerning any inquiry or investigation of any Epinephrine Product or the putative market for any Epinephrine Product.

3.      All privilege logs produced by You in connection with a production referenced in the preceding two Requests.

4.      All Documents in connection with any deposition testimony You have provided or will provide in *In re: EpiPen (Epinephrine Injunction, USP) Marketing, Sales Practices and Antitrust Litigation*, No. 17-md-2785 (DDC/TJJ) (D. Kan.), *KPH Healthcare et al. v. Mylan N.V. et al.*, No. 20-cv-2065-DDC-TJJ (D. Kan.), or *Sanofi-Aventis U.S. LLC v. Mylan Inc., et al.*, No. 3:17-02763 (D.N.J.), including but not limited to deposition transcripts and exhibits.

5.      Documents and Communications between You and any other entity regarding the placement or absence of any Epinephrine Product on any formulary; or agreements concerning rebates, price protection clauses, or any other Epinephrine Product Manufacturer Payments.

6.      Data sufficient to show, for each reimbursement of any Epinephrine Product, the date of any such reimbursement; the dollar amount of any such reimbursement, copayment, or coinsurance in connection with any such Epinephrine Product; dollar amounts of any other fees and costs associated with any such Epinephrine Product; and any Epinephrine Product Manufacturer Payments You received in connection with any such Epinephrine Product.  This

7

includes but is not limited to data, database directories and/or warehouse schema sufficient to navigate and identify Your database or other means of data storage which contain transactional data and reimbursement data, as well as means of verifying, auditing, tracking, or processing transactions and reimbursements, including Epinephrine Product Manufacturer Payments.

7.      Any presentations, educational materials, advertisements, or marketing materials concerning Epinephrine Products provided to You by an Epinephrine Product Manufacturer, wholesaler, distributor, pharmacy, hospital, drug dispensary, or health care professional.

8.      Documents related to the prevalence in the pharmaceutical industry of rebate arrangements, including those involving exclusive or preferred formulary placement.

9.      Documents and communications discussing competition among Epinephrine Product Manufacturers, including market shares, the substitutability of Epinephrine Products, supply and demand for Epinephrine Products, health plan, physician, and patient preferences for Epinephrine Products, entry and exit of Epinephrine Product Manufacturers, and competition on any basis, including: (1) rebates or formulary placement; (2) production costs, manufacturing costs, or pricing of any Epinephrine Product (including relative costs or relative prices as a result of Epinephrine Product Manufacturer Payments); (3) the safety and quality of Epinephrine Products; and (4) any impact on subscribers and patients (both on premiums and out-of-pocket costs).

10.     Documents and communications discussing competition among PBM service providers, including market shares, the substitutability of PBM services, supply and demand for PBM services, health plan, physician, and patient preferences for PBM services, entry and exit of PBM service providers, and competition on any basis.

11.     Documents sufficient to show any of Your agreements with any entity concerning

8

the assignment of any claims related to any Epinephrine Product.

49543920v1

STATE OF CONNECTICUT)
                           ) ss.
COUNTY OF _____)

## BUSINESS RECORDS AFFIDAVIT

Before me, the undersigned authority, personally appeared _____,  who, being by me duly sworn, deposed as follows:

My name is _____, I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

I am the custodian of the records of **AETNA, INC.**  Attached hereto are _____ pages of records from **AETNA, INC.**  These _____ pages of records are kept by **AETNA, INC.** in the regular course of business, and it was the regular course of business of **AETNA, INC.** for an employee or representative of **AETNA, INC.** with knowledge of the act or event to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time of the act or event.  The records attached hereto are the original or exact duplicates of the original.

_____

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official seal this _____ day of _____, 2022.

_____
Notary Public

_____
Notary Public – Print Name

My Commission Expires:

49726732v1

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In re: EpiPen Direct Purchaser Litigation        Case 20-cv-827 (ECT/TNL)

THIS DOCUMENT RELATES TO:                    **PROTECTIVE ORDER**
ALL ACTIONS

This matter comes before the Court on the parties' Report on Protective Order, ECF No. 152, and Stipulation for Protective Order, ECF No. 152-1, (collectively "Report & Stipulation"). The Report & Stipulation outlines the parties' proposal to facilitate the exchange materials containing confidential, private, and/or proprietary information as well as three areas of disagreement and the parties' respective positions with respect thereto.

Based upon the submissions and pursuant to Fed. R. Civ. P. 26(c), **IT IS HEREBY ORDERED** that confidential information be disclosed only in designated ways:

## <u>DEFINITIONS</u>

1.      As used in the Protective Order, the terms listed below are defined as follows:

A.      "**Action**" refers to the above-captioned action: *In re EpiPen Direct Purchaser Litigation*, Court File No. 20-cv-00287 (ECT/TNL) ("Action").

B.      "**Confidential Discovery Material**" are Discovery Material designated as "Confidential," "Highly Confidential – Attorneys' Eyes Only," "Highly Confidential," or "Confidential Health Information" pursuant to the terms of this Protective Order.

C.      "**Confidential**" documents are documents designated under paragraph 4.A.

1

D. "**Highly Confidential – Attorneys' Eyes Only**" documents are documents that are either (i) designated under paragraph 4.B or (ii) designated as "Highly Confidential" in the Other Direct Purchaser Cases or the Other EpiPen Cases, as defined below.

E. "**Confidential Health Information**" documents are documents designated under paragraph 4.C.

F. "**Documents**" (whether capitalized or not) are all materials within the scope of Federal Rule of Civil Procedure 34.

G. "**Other Direct Purchaser Cases**" are: (a) *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, No. 13-MD-2445 (E.D. Pa.); (b) *In re Intuniv Antitrust Litig. (Direct Purchasers)*, No. 1:16-cv-12653-ADB (D. Mass.); (c) *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-md-2836 (E.D. Va.); and (d) *In re Rochester Drug Cooperative, Inc.*, No. 2:20-bk-20230 (W.D.N.Y. Bankr.).

H. "**Other EpiPen Cases**" are any EpiPen-related litigation, including without limitation: (a) *In re EpiPen ERISA Litig.*, No. 17-cv-1884 (D. Minn.) ("EpiPen ERISA Litigation"); (b) *In re EpiPen (Epinephrine Injection, USP) Marketing Sales Practices and Antitrust Litig.*, No. 2:17-md-2785 (D. Kan) and any tag-along cases; (c) *Sanofi-Aventis U.S., LLC, v. Mylan Inc.*, 2:17-cv-02452-DDC-TJJ (D. Kan.); and (d) *KPH Healthcare Services, Inc. v. Mylan N.V., et al.*, No. 20-cv-2065-DDC-TJJ (D. Kan.) ("KPH Litigation").

I. "**Outside Attorneys**" means outside counsel of record for any Party.

J.      **"Outside Vendors"** means messenger, copy, coding, and other clerical-services vendors not employed by a Party or its Outside Attorneys.

K.      **"Written Assurance"** means an executed document in the form attached as Exhibit A.

## SCOPE

2.      This Protective Order applies to all information, documents, and things exchanged in or subject to discovery that are produced or otherwise provided in the Action, either by a Party or non-party (each a "Producing Person"), to any other Party or non-party, in response to or in connection with any discovery requests, including, but not limited to, deposition testimony (whether based on oral examination or written questions), interrogatories, answers to interrogatories, requests for admission, responses to requests for admissions, document requests, documents, information, and other things produced, as well as any and all copies, abstracts, digests, notes, summaries, and excerpts thereof ("Discovery Material").

3.      No action taken in accordance with the Protective Order will be construed as a waiver of any claim or defense in the Action or of any position as to discoverability or admissibility of evidence.

## DESIGNATIONS

4.      A Producing Person may designate a document "Confidential," "Highly Confidential – Attorneys' Eyes Only," and/or "Confidential Health Information" to protect information within the scope of Federal Rule of Civil Procedure 26(c) (the "Designating Party"), in accordance with the following provisions:

A.     "Confidential" will mean sensitive, confidential, proprietary information, or non-public personal information (e.g., social security numbers) that has not been made public by the Designating Party and that the Designating Party reasonably and in good faith believes contains or comprises (i) material that is confidential pursuant to applicable law, including trade secrets, and any other materials that the Designating Party believes in good faith to be entitled to protection under Fed. R. Civ. P. 26(c)(1)(G), (ii) proprietary or otherwise sensitive non-public business information, or (iii) information implicating an individual's legitimate expectation of privacy, such as personal financial information, personal identifying information of the type described in Fed. R. Civ. P. 5.2, or other personally or competitively sensitive information. The Producing Person shall, when producing materials not previously produced in another litigation and when filing material with the Court in this Litigation pursuant to Paragraph 14, make a good faith assessment of whether the passage of time has eliminated the need to mark the material as "Confidential."

B.     "Highly Confidential – Attorneys' Eyes Only" will mean Confidential Discovery Material that the Designating Party reasonably and in good faith believes is so highly sensitive and is of such a nature that disclosure to persons other than those listed in paragraph 11 would create a substantial risk of economic injury that could not be avoided by less restrictive means.  The Producing Person shall, when producing materials not previously produced in another litigation and when filing material with the Court in this Litigation pursuant to Paragraph 14, make a good faith assessment of whether the passage

of time has eliminated the need to mark the material as "Highly Confidential – Attorneys' Eyes Only."

        C.    "Confidential Health Information" will mean information that is of a protected nature under state and federal law and where such protection is necessary to protect the privacy of the patient/insured/member, including, but not limited to, patient/insured/member medical records, patient/insured/member claims information, and other information that the Parties have determined might contain sensitive personal health information. Confidential Health Information is intended to encompass any patient health information protected by state or federal law, including, but not limited to, "Protected Health Information" as defined below.

        i.    "Protected Health Information," as used herein, has the same scope and definition as set forth in 45 C.F.R. § 160.103. Without limiting the generality of the foregoing, Protected Health Information includes, but is not limited to, health information, including demographic information, relating to: the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual, which identifies or reasonably could be expected to identify the individual. It also includes, but is not limited to, medical bills, claims forms, charges sheets, medical records, medical charts, test results, notes, dictation, invoices, itemized billing statements, remittance advice forms, explanation of benefits, checks, notices, and requests, and includes all notes, summaries, compilations, extracts, abstracts, or oral communications that are based on or derived from Protected Health Information, regardless of form or

format. Protected Health Information also includes information that contains the following identifiers of a patient/insured/member or of a relative, employer, or household member of a patient/insured/member, to the extent it is linked to Protected Health Information as defined in 45 C.F.R. § 160.103:

1.     Names;

2.     All geographic subdivisions smaller than a State, including street address, city, county, precinct, and zip code;

3.     All elements of dates (except year) for dates directly related to an individual, including birth date, admission date, discharge date, age, and date of death;

4.     Telephone numbers;

5.     Fax numbers;

6.     Electronic mail addresses;

7.     Social security numbers;

8.     Medical record numbers;

9.     Health plan beneficiary numbers;

10.     Account numbers;

11.     Certificate/license numbers;

12.     Vehicle identifiers and serial numbers, including license plate numbers;

13.     Device identifiers and serial numbers;

14.     Web universal resource locators ("URLs");

6

15. Internet protocol ("IP") address numbers;

16. Biometric identifiers, including finger and voice prints;

17. Full face photographic images and any comparable images;

18. Any other unique identifying number, characteristic, or code; and

19. Any other identification that the producing person knows could be used alone or in combination with other information to identify an individual who is the subject of the information.

ii. Confidential Health Information does not include any document or information in which the Producing Person has redacted the identifiers listed above and does not have actual knowledge that the information could be used alone or in combination with other information to identify an individual who is the subject of the information. The Producing Person may, but is not required to, perform such redactions before producing documents that originally contained Confidential Health Information.

iii. The Parties also seek to ensure that any person who receives and stores Confidential Health Information in connection with this Action will develop, implement, maintain, and use appropriate administrative, technical, and physical safeguards to preserve the privacy, integrity, and confidentiality of any Confidential Health Information, and to prevent unpermitted use of disclosure of any Confidential Health Information they may receive from any person in connection with this Action. At a minimum, all Parties and persons or entities who might receive Confidential Health

Information agree that they will (1) comply with the Privacy and Security Rules, as defined in paragraph 5 below; (2) establish contractual controls that require any vendors, experts, or third parties that might receive Confidential Health Information to comply with the Privacy and Security Rules; and (3) undertake due diligence to verify that the privacy and security protections of any such vendors, experts, or third parties comply with the Privacy and Security Rules. Confidential Health Information will be securely returned or destroyed under the provisions of paragraph 22 below.

D.     As for electronic or hard copy documents designated as "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Confidential Health Information," each will be clearly marked or stamped as "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Confidential Health Information," as applicable, using means sufficient to ensure that every page of such document, when printed, contains the appropriate mark or stamp, where practicable, and will not interfere with legibility or audibility. But electronically stored information ("ESI") produced in native format need not be produced using a means sufficient to ensure that every page of such document contains the appropriate mark or stamp so long as (i) a TIFF placeholder image corresponding to the ESI produced in native format is produced that includes the "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Confidential Health Information," mark; (ii) "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Confidential Health Information," appears in the file name of the natively-produced ESI; or (iii) "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Confidential

Health Information," appears on the label of the media or in the transmittal email containing natively-produced ESI.

5. This Protective Order authorizes the disclosure of information protected by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), as amended, including all applicable regulations and guidance issued by the Secretary of the United States Department of Health and Human Services (collectively "HIPAA Rules"), including, specifically, 42 C.F.R. Part 2 and 45 C.F.R. §§ 164.512(e)(1)(ii)(B), 164.512(e)(1)(v), as well as all state laws and regulations regarding the privacy and security of personal information (collectively with the HIPAA Rules, "Privacy and Security Rules"). This Protective Order constitutes a Qualified Protective Order, as that term is defined in the Privacy and Security Rules.

6. Third parties whose documents are produced in the course of this Action may also designate documents as "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Confidential Health Information" subject to the same protections and constraints as the Parties to this Action. A copy of the Protective Order **and Local Rule 5.6 shall** be served along with any subpoena served in connection with the Action.

## LIMITATIONS ON USE OF CONFIDENTIAL DISCOVERY MATERIAL

7. All Confidential Discovery Material produced in this Action may be used solely for purposes of this Action.

8.      Any person subject to this Protective Order who receives Confidential Discovery Material pursuant to the terms of this Protective Order may not disclose such Confidential Discovery Material to anyone else except as expressly permitted hereunder.

9.      Nothing in this Order precludes (A) a Party from using its own documents or information; or (B) any Party from using documents or information that are public or that are obtained from a source other than a Producing Party.

## ACCESS TO CONFIDENTIAL DISCOVERY MATERIAL

10.     Access to Confidential documents will be limited to:

A.      The Court and its staff;

B.      In-house counsel, representatives and current employees of the Parties responsible for overseeing and assisting with the Action to whom disclosure is reasonably necessary, and Outside Attorneys, their law firms, and their Outside Vendors;

C.      Persons shown on the face or metadata of the document to have authored or received it, or from whose files the document was produced;

D.      Any current employee or director of the Producing Person, or any witness designated to testify as a Rule 30(b)(6) witness on behalf of the Producing Person;

E.      During a deposition or court proceeding, any fact witness who is a former employee or former agent of a Producing Person, and who was employed by or an agent of the Producing Person at the time the Discovery Material was created, provided that (1) it is shown through testimony or other evidentiary proof that the witness prepared, received or reviewed the information or otherwise to have personal knowledge regarding

its contents; or  (2) (a) the counsel who discloses the information to the witness determines, in good faith, that such disclosure is reasonably necessary and appropriate to assist in the conduct of this Action and (b) the witness has executed the "Written Assurance" in the form attached as Exhibit A.

Should any Party notify a Producing Person that the Party anticipates requiring a former employee or former agent to execute a "Written Assurance" before or during a deposition or court proceeding, the Producing Person shall, without waiving any rights, make a good faith effort to ensure that the former employee or former agent execute the "Written Assurance" so as to minimize the need for Court intervention;

F.      Court reporters, stenographers, or videographers who record deposition or other testimony in connection with this Action;

G.      Outside industry advisors, outside financial advisors, outside accounting advisors, outside experts, and outside consultants (and their respective staff) that are specifically retained by the signatories to this Protective Order as consultants or experts in this Action, and who have signed a "Written Assurance" in the form provided as Exhibit A;

H.      Any persons to whom the Parties agree in writing and who have executed the "Written Assurance" in the form attached as Exhibit A; and

I.      Discovery masters, special masters, mediators, or other third parties who are appointed by the Court or retained by the Parties for settlement purposes or resolution of discovery or other disputes, and their necessary personnel.

11.     Access to Highly Confidential – Attorneys' Eyes Only documents will be limited to:

    A.     The Court and its staff;

    B.     Outside Attorneys, their law firms, and their Outside Vendors;

    C.     Persons shown on the face or metadata of the document to have authored or received it, or from whose files the document was produced;

    D.     Court reporters, stenographers, or videographers who record deposition or other testimony in connection with this Action retained to transcribe testimony;

    E.     Any current employee or director of the Producing Person, or any witness designated to testify as a Rule 30(b)(6) witness on behalf of the Producing Person;

    F.     During a deposition or court proceeding, any fact witness who is a former employee or former agent of a Producing Person, and who was employed by or an agent of the Producing Person at the time the Discovery Material was created, provided that (1) the witness is shown through testimony or other evidentiary proof to have prepared, received or reviewed the Highly Confidential Information or otherwise to have personal knowledge regarding its contents, and (2) the witness has executed the "Written Assurance" in the form attached as Exhibit A.

Should any Party notify a Producing Person that the Party anticipates requiring a former employee or former agent to execute a "Written Assurance" before or during a deposition or court proceeding, the Producing Person shall, without waiving any rights,

make a good faith effort to ensure that the former employee or former agent execute the "Written Assurance" so as to minimize the need for Court intervention;

G.      Outside industry advisors, outside financial advisors, outside accounting advisors, outside experts, and outside consultants (and their respective staff) that are specifically retained by the signatories to this Protective Order as consultants or experts in this Action, and who have signed a "Written Assurance" in the form provided as Exhibit A;

H.      Any persons to whom the Parties agree in writing and who have executed the "Written Assurance" in the form attached as Exhibit A;

I.      Discovery masters, special masters, mediators, or other third parties who are appointed by the Court or retained by the Parties for settlement purposes or resolution of discovery or other dispute, and their necessary personnel; and

J.      Two designated in-house counsel from each set of Defendants (Caremark, Express Scripts, Mylan, OptumRx), only during, or in preparation for, the hearings of any dispositive motions (including any hearing on class certification), subject to the following:

   i.      The designated in-house counsel must be assisting in the prosecution or defense of this Action, and their job responsibilities must pertain to litigation management;

   ii.      The designated in-house counsel may attend the hearings of any dispositive motions (including any hearing on class certification), and during those

hearings the parties may quote, display, or reference information designated as "Highly Confidential – Attorneys' Eyes Only";

       iii.    Except during, or in preparation for, the hearings on dispositive motions (including any hearing on class certification), and except as otherwise provided in the Protective Order (such as paragraph 11.C), the parties may not otherwise disclose to the designated-in house counsel information that has been designated as "Highly Confidential – Attorneys' Eyes Only";

       iv.    Material designated as "Highly Confidential – Attorneys' Eyes Only" shall not be disclosed to designated-in house counsel unless and until such person has signed a declaration in the form provided as Exhibit B;

       v.    The following individuals will be the designated in-house counsel:

       1.    The Caremark Defendants (CaremarkPCS Health, L.L.C., Caremark L.L.C., and Caremark Rx, L.L.C.): Andrea Zollett and Kevin Blake;

       2.    The Express Scripts Defendants (Express Scripts, Inc., and Medco Health Solutions, Inc.): Adam Rucker and Urmila Baumann;

       3.    The Mylan Defendants (Mylan Inc. and Mylan Specialty L.P.): Brian P. Cuthbertson and Bradley A. Matta; and

       4.    OptumRx, Inc.: Shari Aberle and Brian Thomson.

       vi.    In the event of any change in the role and responsibilities of a party's designated in-house counsel as of the date of the designated in-house counsel's declaration that would materially alter that declaration, the affected party shall (a) suspend

14

all access to information designated as "Highly Confidential – Attorneys' Eyes Only", and (b) within five business days, notify all other parties of the changed circumstances, and either cause the designated in-house counsel to execute a new declaration or propose a substitute in-house counsel consistent with the terms of this Order. For the purposes of this Order, a change in the in-house counsel's role shall be deemed material if it alters paragraph 5 of the in-house counsel's declaration. The parties shall engage in good faith discussions to resolve any situation set forth in this paragraph, but may present any disagreements to the Court for resolution.

12.     Access to Confidential Health Information will be limited to:

A.     The Court and its staff;

B.     In-house counsel, representatives and current employees of the Parties responsible for overseeing and assisting with the Action to whom disclosure is reasonably necessary, and Outside Attorneys, their law firms, and their Outside Vendors;

C.     Persons shown on the face or metadata of the document to have authored or received it, or from whose files the document was produced;

D.     Any witness designated to testify as a Rule 30(b)(6) witness on behalf of the Producing Person;

E.     Any person to whom the patient health information pertains, provided that a such a person (1) may not be shown patient health information pertaining to anyone but that person or a minor of whom that person is the parent or guardian and (2) may not be shown anything besides patient health information if the document is designated as Confidential or Highly Confidential – Attorneys' Eyes Only unless that person is

15

independently permitted to review such documents pursuant to paragraphs 10 or 11, respectively;

F.     Court reporters, stenographers, or videographers who record deposition or other testimony in connection with this Action;

G.     Outside industry advisors, outside financial advisors, outside accounting advisors, outside experts, and outside consultants (and their respective staff) that are specifically retained by the signatories to this Protective Order as consultants or experts in this Action, and who have signed a "Written Assurance" in the form provided as Exhibit A;

H.     Any persons to whom the Parties agree in writing and who have executed the "Written Assurance" in the form attached as Exhibit A; and

I.     Discovery masters, special masters, mediators, or other third parties who are appointed by the Court or retained by the Parties for settlement purposes or resolution of discovery or other dispute, and their necessary personnel.

13.     Each person appropriately designated under paragraph 10.F. or 10.G to receive Confidential information, in paragraph 11.F or 11.G to receive Highly Confidential – Attorneys' Eyes Only documents, and in paragraph 12.G or 12.H to receive Confidential Health Information documents will execute a "Written Assurance" in the form attached as Exhibit A. Outside Attorneys who provided access to Discovery Material to persons in accordance with this paragraph will maintain a collection of each executed Exhibit A.

## USE OF CONFIDENTIAL DISCOVERY MATERIAL

14.   **This Protective Order does not authorize the filing of any document under seal. The sealing of entire pleadings, memoranda of law, exhibits, and the like is strongly discouraged. No document shall be filed under seal unless such document or information therein is genuinely confidential and/or there are compelling reasons to do so. Any party seeking to file a document under seal shall specifically review each document and the information therein to limit sealing only to the extent necessary.**

**A confidential document may be filed only in accordance with Local Rule 5.6. Any Party seeking to file with the Court documents designated Confidential, Highly Confidential – Attorneys' Eyes Only, or Confidential Health Information under seal shall do so in accordance with Local Rule 5.6.**

**Any joint motion made pursuant to Local Rule 5.6 before United States Magistrate Judge Tony N. Leung shall conform to Exhibit C attached hereto. Counsel shall provide the Court with two courtesy copies of the unredacted documents with the redacted information highlighted in yellow.**

**Except as otherwise provided in Local Rule 5.6,** a Party intending to present another Party's or a non-party's Confidential Discovery Material at a hearing or trial must promptly, and no less than three days before the hearing or trial, notify all counsel of record for the Designating Party and for all other Parties so that they may seek relief from the court.

15.     All depositions or portions of depositions taken in the Action that contain confidential information may be designated by a Party or its counsel as "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Confidential Health Information" and thereby obtain the protections accorded other "Confidential," "Highly Confidential – Attorneys' Eyes Only," and "Confidential Health Information" documents. Confidentiality designations for depositions will be made either (a) orally on the record and requesting that the relevant portion(s) of testimony be so designated, or (b) by written notice to the Parties and those who were present at the deposition. Unless otherwise agreed, depositions will be treated as "Highly Confidential – Attorneys' Eyes Only" during the 30-day period following receipt of the transcript. The deposition of any witness (or any portion of such deposition) that encompasses Confidential, Highly Confidential – Attorneys' Eyes Only, or Confidential Health Information documents and information will be taken only in the presence of persons who are qualified to have access to such information.  Nothing in this paragraph will apply to or affect the confidentiality designations on Discovery Material entered as an exhibit at depositions.  Nor will anything in this paragraph preclude the witness from reviewing his or her deposition transcript.

16.     If testimony is designated as "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Confidential Health Information," the court reporter, who will first have agreed to abide by the terms of this paragraph, will be instructed to include on the cover page of each such transcript the legend: "This transcript portion contains information subject to a Protective Order and will be used only in accordance therewith" and each page of the transcript will include the legend "Confidential," "Highly Confidential

– Attorneys' Eyes Only," or "Confidential Health Information," as appropriate. If the deposition is videotaped, the videotape will also be subject to the same level of confidentiality as the transcript and include the legend "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Confidential Health Information," as appropriate, if any portion of the transcript itself is so designated.

17.     Any document produced (or material containing information from a document produced), any deposition transcripts or exhibits, any expert reports, any filings, and other materials from the Other Direct Purchaser Cases or the Other EpiPen Cases involving any of the Parties in this Action that were designated therein as Confidential, Highly Confidential, Highly Confidential – Attorneys' Eyes Only or Confidential Health Information pursuant to the terms of the operative Protective Orders in those cases shall be given the corresponding confidentiality designation in this case, unless the original source of the document agrees to waive confidentiality, the document has since become public, or the Court orders otherwise.

18.     If a Party or any other person or entity that has agreed to be bound by this Protective Order by executing Exhibit A (a "Subpoena Recipient") is served with a subpoena or a court order issued in other litigation or a request from a legislative or other administrative body with authority to compel disclosure requesting information or items designated in the action as "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Confidential Health Information," they must promptly notify in writing the Designating Party. Such notification will include a copy of the subpoena or order. The Subpoena Recipient will promptly notify in writing the party who caused the subpoena or order to

issue in the other litigation or proceedings that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification will include a copy of this Protective Order. The Subpoena Recipient must cooperate with the Designating Party with respect to all reasonable procedures sought by the Designating Party whose material may be affected. If the Designating Party timely seeks a protective order the Party served with the subpoena will not produce any information designated as "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Confidential Health Information" before a determination by **a court in accordance with Federal Rule of Civil Procedure 45**, unless the Subpoena Recipient has obtained the Designating Party's permission. The Designating Party will bear the burden and expense of seeking protection in that court of its confidential material. Nothing contained in this provision will be construed as authorizing or encouraging a Subpoena Recipient in this action to disobey a lawful directive from another court.

## CHANGES TO DESIGNATIONS

19.     If at any time prior to the trial of this action, a Producing Person realizes that some portion(s) of Discovery Material that she, he, or it had previously produced should be designated as Confidential, Highly Confidential – Attorneys' Eyes Only, or Confidential Health Information, she, he, or it may so designate by so apprising all prior recipients of the Discovery Material in writing, and thereafter such designated portion(s) of the Discovery Material will thereafter be deemed to be and treated as Confidential, Highly Confidential – Attorneys' Eyes Only, or Confidential Health Information under the terms

of this Protective Order. Notwithstanding this provision, a Party may challenge the asserted confidentiality designation as provided for herein.

20.     Any Party who inadvertently fails to identify documents as "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Confidential Health Information" will provide written notice and substitute appropriately-designated documents. Any Party receiving such improperly-designated documents will retrieve such documents from persons not entitled to receive those documents and, upon receipt of the substitute documents, will return or destroy the improperly-designated documents.

21.     Any Party may request a change in the designation of any information designated "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Confidential Health Information." Any such document will be treated as designated until the change is completed. If the requested change in designation is not agreed to by the Parties, the Party seeking the change may move the Court for appropriate relief, providing notice to any Party or third party whose designation of produced documents as "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Confidential Health Information," in the Action may be affected. The Party asserting that the material is "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Confidential Health Information" will have the burden of proving that the information in question is within the scope of protection afforded by Federal Rule of Civil Procedure 26(c). If the motion affects a document produced by a non-party then, with respect to the motion, that non-party is entitled to the same notice and opportunity to be heard as a Party.

21

## **DISPOSITION OF CONFIDENTIAL DISCOVERY MATERIAL**

22.     Within 60 days of the termination of the Action, including any appeal, each Party to the Action will either destroy or return to the other Parties all documents produced by the other Parties that were designated as "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Confidential Health Information," and all copies of such documents, and will destroy all extracts and data taken from such documents. Each Party will provide a certification as to such return or destruction within the 60-day period. But attorneys will be entitled to retain a set of all documents filed with the Court and all correspondence generated in connection with the Action as well as materials that contain, reflect, incorporate, attach, or reference attorney work product, so long as the terms of this Order will continue to govern any such retained materials. Additionally, with respect to ESI, the Parties need not destroy backup media so long as the Party has a data destruction policy for the backup media that will result in the overwriting or destruction of that data. Similarly, in-house counsel, external counsel, experts or consultants retained to assist with the Action, and their respective employees or staff, will not be required to destroy "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Confidential Health Information" material contained in their email accounts or document management systems, so long as they otherwise comply with this Order with respect to such retained material. Nothing in this paragraph shall obligate any Party to destroy its own Confidential Information at the close of this Action or at any other time.

## PRIVILEGED AND PROTECTED MATERIALS

23.    Pursuant to Federal Rule of Evidence 502(d), the production or disclosure of privileged or protected materials, whether inadvertent or otherwise, does not waive any applicable privilege or protection in this Action or any other proceeding.  The Parties intend for this paragraph to be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).  The parties need not satisfy the requirements of Federal Rule of Evidence 502(b) to assert claims of privilege or protection over materials that are produced or disclosed in connection with this Action.

24.    Regarding assertions of privilege and protection:

A.    For all responsive Documents redacted or withheld because they are alleged to contain privileged or protected information, the Parties agree to produce, in Excel format, privilege logs associated with any given production within 28 days of that production. Without limiting requirements, the privilege logs will include the following information at a minimum:

i.    A unique number for each entry on the log.

ii.    The date of the Document. For emails, this should be the sent date and for other Documents this should be the last-modified date or, if not available, the creation date.

iii.    The author of the Document. For emails, this should be populated with the Metadata extracted from the "Email From" field associated with the file. For other Documents, this should be populated with the Metadata extracted from the "Author" field; provided that, if such field contains generic information such as the

company name, a Party may substitute the information contained in the "Custodian" Metadata field.

   iv. The recipient(s) of the Document where reasonably ascertainable. For emails, this should be populated with the Metadata extracted from the "Email To" field associated with the file. Separate columns should be included for the metadata extracted from the "Email CC" and "Email BCC" fields, where populated.

   v. A description of why privilege or protection is being asserted over the Document. This description should include information sufficient to identify if the Document contained attachments over which privilege is also being asserted.

   vi. The type of privilege(s) and/or protection(s) being asserted, for example: (i) "AC" for Attorney/Client, (ii) "WP" for Attorney Work Product, and (iii) "CI" for Common Interest.

   B. The Parties shall identify on their logs where counsel is present in conversation, specifically for columns (A)(iii) and (iv) noted above. Where the presence of counsel forming the basis of the privilege is not readily ascertainable from columns (A)(iii) and (iv) above, the Parties shall include a reference to counsel in the privilege description field described in (A)(v) above.

   C. The Parties shall not be required to log materials relating to this lawsuit after March 29, 2020 (the date of the earliest filed complaint, *see* Case No. 20-cv-0827 (D. Minn.), ECF No. 1). This date does not otherwise limit the relevant time period for discovery. The Parties shall also not be required to log privileged communications between a party and its in-house or outside counsel, or among a party's in-house or outside

counsel, relating to the Other Direct Purchaser Cases or the Other EpiPen Cases.  The Parties agree that they will confer at a later time to determine whether any other categories of privileged materials can be excluded from the logging requirement. Notwithstanding the foregoing, all responsive privileged materials must be preserved in the event of a later dispute.

D.      If a Document to be produced in Native Format requires redaction then it should be produced in redacted native format to the extent feasible. The native file should show the word "redacted" where applicable, should identify the reason for the redaction, and a production Load File field should be populated to indicate the native file contains a redaction.

E.      When a TIFF image is redacted, the TIFF image should show the word "redacted" where applicable, should identify the reason for the redaction, and a production Load File field should be populated to indicate the Document contains a redaction. All other text shall be OCR'ed.

F.      If a Party claims that a member of a Document family that contains a responsive document is privileged, the particular Document within the family that is subject to the assertion shall be redacted or produced as a Bates-labeled slipsheet in place of that particular Document, along with all metadata for the particular Document as specified in Exhibit A to the ESI Protocol in this Action, and the balance shall be produced. The slipsheet for each withheld Document will state "Family Member Withheld as Privileged" (or similar language).

G.     In the event that a Party initially withholds a Document that forms a part of a Document family, and that Document is later produced either by decision of the Party or by order of the Court, the Party shall produce that Document with the Bates number previously given to the slipsheet for that document.

H.     Where feasible, the Producing Person shall provide updated metadata, including metadata associating any previously withheld Document with its Document family.

25.     Any Party who inadvertently produces or discloses privileged materials will, promptly upon discovery of such inadvertent production or disclosure, notify the receiving Party/ies in writing and request that the documents be returned.  When a receiving Party receives notice of such inadvertent production or disclosure it must sequester, return, or destroy the inadvertently produced or disclosed privileged materials and confirm that any persons or entities to whom it has provided such privileged materials have sequestered, returned, or destroyed the privileged materials.  The privileged materials may not be used or disclosed for any purpose—including to challenge the assertion of privilege over those materials—unless and until the assertion of privilege is withdrawn or overruled.  The privileged materials will be deleted or otherwise permanently removed from any systems used to house documents, including document review databases, e-rooms, and any other locations that store the privileged materials.  Any extracts, notes or summaries referring or relating to any such inadvertently produced or disclosed privileged materials must likewise be returned or destroyed.  Within seven days of providing notice of inadvertent production or disclosure, a Party or Producing Person claiming privilege for inadvertently produced

or disclosed privileged materials must state the basis for the privilege assertion in a privilege log in the format required by paragraph 24. Nothing herein will prevent a receiving Party from challenging the propriety of a privilege assertion by submitting a challenge to the Court consistent with applicable law, although the privileged materials themselves cannot be used or disclosed as part of such a challenge. The Party asserting privilege bears the burden of establishing the privileged nature of any inadvertently produced or disclosed privileged materials. If a receiving Party becomes aware that it is in receipt of information or materials that it knows or reasonably should know is privileged, protected, or immune, counsel for the receiving Party will immediately take steps to (i) stop reading such information or materials, (ii) notify counsel for the Producing Party of such information or materials, (iii) collect all copies of such information or materials, (iv) sequester, destroy, or return such information or materials to the Producing Party, and (v) otherwise comport themselves with the applicable provisions of the Rules of Professional Conduct.

## **EXPERT WITNESS DISCLOSURE**

26.     Disclosure of Certain Information Regarding Expert Witnesses.

        A.     No subpoenas (for depositions or documents) need be served on any Rule 26(a)(2)(B) or Rule 26(a)(2)(C) expert in this case. Instead, the Party or Parties retaining such expert will make him or her available for deposition, at a time mutually agreed to by the Parties. If an expert is required to submit a report pursuant to Rule 26(a)(2)(B), the deposition of such expert will be conducted after the report is served. If a testifying expert is not required to submit a report pursuant to Rule 26(a)(2)(C), the deposition of such expert

will be conducted within 30 days of that expert's disclosure, or at another time mutually agreed by the Parties. If such an expert has already been deposed as a fact witness, he or she may be deposed again in his or her expert capacity.

B.      Within three business days of service of a report, the Party submitting such report shall produce: (i) any data, facts or other information relied upon by the expert in forming the expert witness's opinions and not previously produced in this action, as well as a list identifying by bates range or other appropriate identifiers any produced data, facts, or other information relied upon by the expert in forming the expert witness's opinions; (ii) any exhibits that will be used to summarize or support the expert witness's opinions; (iii) the expert witness's qualifications, including a list of all publications authored in the previous ten years; (iv) a list of all other cases, during the previous four years, where the expert witness has testified as an expert at trial or by deposition; and (v) a statement of the compensation to be paid for the study and testimony in this case.  To the extent such disclosures include charts, tables, exhibits, information or data processed or modeled by computer at the direction of a disclosed testifying expert in the course of forming the expert's opinions, machine-readable copies of the exhibits, information, or data (including all linked data files, input and output files, formulas contained within spreadsheet cells and similar electronic information necessary to understand the charts, tables, exhibits, information, or data) sufficient to allow the replication of all analysis contained in the report, where applicable, along with appropriate computer programs and instructions necessary to access and use the data (unless such computer programs are reasonably and readily commercially available) shall also be

provided with such disclosures. Information gleaned from non-public sources shall also be provided with such disclosures.

27.    Non-Disclosure of Certain Information Regarding Expert Witnesses.

A.    The below-listed categories of documents, recording media, and communications need not be disclosed by any Party and an expert may not be examined at deposition, hearing, or trial on the contents of the below-listed categories of documents, recording media, and communications (subject to the exceptions at the end of this Paragraph):

i.    any notes or other writings taken or prepared by or for an expert witness in connection with this matter (aside from the final written expert report(s) and notes generated while testifying), including:

1.    written correspondence or memoranda to or from, and notes of conversations between and among the expert witness and the expert's assistants and/or support staff, non-testifying consultants (including their staffs), or attorneys for the Party or Parties (including their staffs); and/or

2.    copies of materials produced by any Party in this Action bearing the notes, markings, or comments of the expert, the expert's assistants and/or support staff, non-testifying

                    consultants (including their staffs), or attorneys for the Party or Parties (including their staffs);

ii.   any draft reports, draft studies, draft work papers, draft declarations, or other draft materials prepared by, for, or at the direction of an expert witness, regardless of the form in which the draft is recorded; and

iii.   any oral or written communication between and among expert witnesses and their assistants and/or support staff, non-testifying consultants (including their staffs), or attorneys for the Party or Parties (including their staffs), regardless of the form of the communications.  For avoidance of doubt, this includes oral or written communication between any of the individuals listed above, including but not limited to (a) one expert and/or their staff and assistants and (b) another expert and/or their staff and assistants.

B.   The foregoing exclusions from disclosure set forth in subparagraphs (a)-(i-iii) do not apply to any communications, documents, data sets, or analyses upon which an expert relies as a basis for his or her ultimate opinion. In addition, examination shall be permitted on alternative analyses, methodologies, or approaches to issues on which the expert is testifying, regardless of whether the expert considered them in forming the expert's opinion, including but not limited to analyses that the expert performed but ultimately did not rely upon.

C.      Communications between and among experts, their staffs, and attorneys shall not be discoverable unless relied upon as a basis for any expert's ultimate opinion(s). Although communications relating to compensation for the expert's work or testimony shall not be required to be produced or exchanged, the Parties may examine witnesses at deposition or trial as to the amount they charge.

28.     Except as provided under Fed. R. Civ. P. 26(b)(4)(D), no Party may take discovery of an expert who has been retained or specially employed by another Party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial, without the express written consent and authorization of the Party employing such expert.

## DUTY TO NOTIFY

29.     If any Party learns of a potential breach of this Agreement or of the confidentiality of any document designated as "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Confidential Health Information" under this Agreement, that Party will promptly inform all other Parties in writing of the breach.

## MODIFICATION AND DURATION OF THIS ORDER

30.     Any Party may apply to the Court for a modification of the Protective Order, and nothing in this Protective Order will be construed to prevent a Party from seeking such further provisions enhancing or limiting confidentiality as may be appropriate.

31.     The obligations imposed by the Protective Order will survive the termination of the Action.

## **PRIOR ORDERS**

32.     **All prior consistent orders remain in full force and effect.**

## **REMEDIES**

33.     **Failure to comply with any provision of this protective order or any other prior consistent order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits, and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.**


Dated: April____9____, 2021                    _____*s/ Tony N. Leung*_____
                                              Tony N. Leung
                                              United States Magistrate Judge
                                              District of Minnesota


                                              *In re: EpiPen Direct Purchaser Litigation*
                                              Case No. 20-cv-827 (ECT/TNL)

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

In re: EpiPen Direct Purchaser Litigation         Case No. 20-cv-827 (ECT/TNL)

THIS DOCUMENT RELATES TO:                        **EXHIBIT A**
ALL ACTIONS

---

## NON DISCLOSURE WRITTEN ASSURANCE

I, _____, acknowledge that I have read and

understand the Protective Order in this action dated_____, filed in the

above captioned case pending in the United States District Court for the District of

Minnesota.  I agree to comply with and be bound by the provisions of the Protective

Order.  I understand that any violation of the Protective Order may subject me to

sanctions by the Court.

Consistent with the terms of this Protective Order, I will not divulge any

documents designated "Confidential," "Highly Confidential – Attorneys' Eyes Only," or

"Confidential Health Information" obtained under such Protective Order, or the contents

of such documents, to any person other than those specifically authorized by the

Protective Order. I will not copy or use such documents except for under the terms of the

Protective Order.

As soon as practical, but no later than 30 days after final termination of this

Action, I will return to the attorney from whom I have received them any documents in

my possession designated "Confidential," "Highly Confidential – Attorneys' Eyes Only,"

or "Confidential Health Information," and all copies, excerpts, summaries, notes, and other materials containing or discussing some or all of the contents of such documents.

I submit myself to the jurisdiction of the United States District Court for the District of Minnesota for the purpose of enforcing or otherwise providing relief relating to the Protective Order.

Executed on _____          _____
                         (Date)                                        (Signature)

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

In re: EpiPen Direct Purchaser Litigation          Case No. 20-cv-827 (ECT/TNL)

THIS DOCUMENT RELATES TO:                    **EXHIBIT B**
ALL ACTIONS

---

### IN-HOUSE COUNSEL DECLARATION OF _____

I, _____, declare and state the following:

1.      I am over the age of 18, have personal knowledge of the facts at issue, and am competent to testify to the matters set forth herein.

2.      I   work   at   _____.   My   job   title   is _____.

3.      I   am   one   of   the   in-house   counsel   designated   by _____ to access information designated as "Highly Confidential – Attorneys' Eyes Only" as defined by paragraph 11.I of the Protective Order in this matter.

4.      I certify that I have been provided with a copy of the Protective Order, have read it, understand it, and will abide by all of its terms.

5.      I certify that my responsibilities include oversight of this Action.

6.      I   certify   that   I   will   not   use   any   information   designated   as   "Highly Confidential – Attorneys' Eyes Only" in business decision-making, or share or provide access to any information designated as "Highly Confidential – Attorneys' Eyes Only" to any   other   current   or   former   employee   of   _____   involved   in

business decision-making.  For purposes of this paragraph, I acknowledge that "business decision making" includes but is not limited to:  advising or participating in formulary decision making, rebate negotiations, client contracts, or other decisions made in light of similar or corresponding information about my company's competitors.

7.      I submit myself to the jurisdiction of the United States District Court for the District of Minnesota for the purpose of enforcing or otherwise providing relief relating to the Protective Order.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____        _____
                            (Date)                              (Signature)

**EXHIBIT C**

**SAMPLE LOCAL RULE 5.6 GRID FOR CASES WITH U.S. MAGISTRATE JUDGE TONY N. LEUNG**

| Docket No. | Description of Document | Relevant Page Numbers | Mark "X" in Applicable Column | | | Nonparty that Designated Doc. Confidential (If Any) | Reason Why Document Should Remain Sealed or Be Unsealed |
|---|---|---|---|---|---|---|---|
| | | | Parties Agree Doc. Should Remain Sealed | Parties Agree Doc. Should Be Unsealed | Parties Disagree | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

For documents with confidential information spanning more than one category, a separate entry should be used for each category of information. For example, a memorandum contains both confidential financial records and medical records:

| Docket No. | Description of Document | Relevant Page Numbers | Mark "X" in Applicable Column | | | Nonparty that Designated Doc. Confidential (If Any) | Reason Why Document Should Remain Sealed or Be Unsealed |
|---|---|---|---|---|---|---|---|
| | | | Parties Agree Doc. Should Remain Sealed | Parties Agree Doc. Should Be Unsealed | Parties Disagree | | |
| 26 | *Unredacted memorandum of in support of XYZ, Inc.'s motion for summary judgment* | *5, 8, 12-15, 23-25* | X | | | | *Confidential financial information.* |
| 26 | *Unredacted memorandum of in support of XYZ, Inc.'s motion for summary judgment* | *16-20, 26-27* | X | | | | *Confidential medical records.* |

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In re: EpiPen Direct Purchaser Litigation          Case No. 20-cv-827 (ECT/TNL)

THIS DOCUMENT RELATES TO:                    **ORDER ON PROTOCOL**
ALL ACTIONS                                               **FOR PRODUCTION OF**
                                                              **DOCUMENTS**

This matter comes before the Court on the parties' Report on Stipulated ESI Discovery Plan, ECF No. 156, and Proposed Order on the Protocol for Production of Documents, ECF No. 156-1, (collectively "Report & Proposed Order").  The Report & Proposed Order outline the parties' proposal to govern the production of documents during discovery as well as two areas of disagreement and the parties' positions with respect thereto.

Based on the submissions of the parties, **IT IS HEREBY ORDERED** that the following will govern production of documents during discovery"

## 1.      **DEFINITIONS**

1.1      "**Action**" means *In re EpiPen Direct Purchaser Litigation*, Case No. 20-cv-0827-(ECT/TNL) (D. Minn.) and all cases coordinated or consolidated with that matter.

1.2      "**Document**" is defined by, synonymous in meaning with, and equal in scope to the usage of the term in the Federal Rules of Civil Procedure 26 and 34 and the Local Rules. For avoidance of doubt, the term "Document" includes Hard Copy Documents and ESI. A draft or non-identical copy is a separate Document within the meaning of this term.

1.3    "**ESI**" is an abbreviation of "electronically stored information" and has the same meaning it has in Federal Rules of Civil Procedure 26 and 34(a)(1)(A), and refers to computer-generated information or data of any kind, stored in or on any storage media.

1.4    "**Extracted Text**" means the text extracted from a Document, and includes all header, footer, redlines, comments, notes, and document body information.

1.5    "**Hard Copy Document**" means a Document that was maintained in paper or other tangible form.

1.6    "**Load File**" means an electronic file containing information identifying a set of paper-scanned images, processed ESI, or Native Format files, as well as the corresponding Extracted Text or OCR text files, and containing agreed-upon extracted or user-created Metadata, as well as information indicating unitization (i.e., document breaks and document relationships such as those between an email and its attachments). A Load File is used to import all image, native, and text files and their corresponding production information into a document database. The Producing Party will produce a Load File for all produced Documents in accordance with specifications provided in Exhibit A.

1.7    "**Metadata**" means information or data about data, and includes, without limitation: (i) all other text and information other than Extracted Text; (ii) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file; (iii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system; and/or (iv) structured information about Documents

that is created by the file system or application, embedded in the Documents, and sometimes modified through ordinary business use.

1.8 "**Native Format**" means the format of a Document in the application in which such Document was originally created and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.

1.9 "**OCR**" means the optical character recognition technology used to read paper Documents or electronic images of Documents and output such Documents to a searchable text format. The latter text is also referred to as the "OCR text" or simply "OCR."

1.10 "**Party**" or "**Parties**" means, individually or collectively, all Plaintiffs and Defendants, as well as any later added plaintiffs and defendants.

1.11 "**Producing Party**" means any Party or third party upon whom a discovery request or subpoena has been served in this Action that produces Documents.

1.12 "**Requesting Party**" means any Party who serves a discovery request or subpoena in this Action.

1.13 "**Structured Data**" means data that resides in a fixed field within a record or file, or stored in a structured format, such as databases (such as SAP, JD Edwards, Oracle, SQL, Access) or data sets, according to specific form and content rules as defined by each field of the database.

1.14 "**Tagged Image File Format**" or "**TIFF**" refers to the CCITT Group IV graphic file format for storing bit-mapped images of Documents. For files produced as

3

TIFF images, each page of a Document will be electronically served as an image file, as outlined in Exhibit A.

**2.** **SCOPE**

2.1    The procedures and protocols set forth in this Order will govern the production format of Documents in this Action.

2.2.    Nothing in this Order is intended to be inconsistent with or to exceed a Party's obligations under the Local Rules, the Federal Rules of Civil Procedure, or applicable state and federal statutes.

2.3    Nothing in this Order waives or limits any Party's right to object to the responsiveness, production, discoverability, possession, custody, control, or confidentiality of Documents.

2.4    By entering this Order, a Party is not giving up its right to review its Documents for privilege or any other reason.

2.5    Generally, the costs of producing Documents pursuant to this Order shall be borne by each Producing Party.

2.6    The Parties will meet and confer in good faith in an effort to resolve any disputes that may arise under this Order, prior to seeking assistance from the Court in accordance with Local Rules.

**3.** **PRESERVATION**

3.1    Each Party is responsible for taking reasonable steps to preserve discoverable Documents (including ESI and Hard-Copy Documents) in its possession, custody, or control, except as provided in paragraph 3.4.

3.2    Each Party is also responsible for taking reasonable steps to preserve metadata in its possession, custody, or control, except as provided in paragraph 3.4. In particular, each Party must take reasonable steps to preserve ESI, ensuring the dates, times, and file metadata are the same as the original source data and not the byproduct of data collection or data processing.

3.3    The Producing Party shall collect and process Documents using methods that preserve available data. The Producing Party shall use the following specifications (to the extent reasonably feasible) when converting Documents permitted to be produced in TIFF format from Native Format into TIFF image files prior to production:  (a) all tracked changes and comments shall be maintained as last saved so that all changes to a Document are evident; (b) all word processing and slideshow Documents shall either include and show field codes for auto-date and auto-time fields or the vendor shall force off auto date when processing; (c) author comments shall remain and be made visible; (d) presenter notes shall be made visible; and (e) any other hidden text shall be expanded, extracted, and rendered in the TIFF file, including hidden worksheets, hidden columns, hidden rows, speakers notes, tracked changes, or comments.

3.4.    The Parties agree that there is no need to preserve, collect, or produce Documents from the following sources, which are deemed not likely to contain relevant information and/or be reasonably accessible:

(a) voice mails;

(b) mobile devices;

(c) text and instant messages;

(d) personal computers and personal e-mail not used for business;

(e) social media sites not used for business;

(f) random access memory (RAM) or other ephemeral data;

(g) on-line access data such as temporary Internet files, histories, caches, cookies, etc.;

(h) data in Metadata fields that are frequently updated automatically (e.g., last-opened dates);

(i) "deleted," "slack," "fragmented," or "unallocated" data on hard drives; and

(j) back-up tapes and other archival media that is understood to be duplicative of data that is more accessible elsewhere and that is being preserved. This includes, but is not limited to, backup media created as part of a disaster recovery system.

## 4.      SEARCH METHODOLOGY (EXCEPT FOR STRUCTURED DATA)

4.1     To the extent the Parties wish to use search terms or alternative search methodologies with respect to the review and production of ESI, they shall meet and confer in good faith regarding the search methodology, including the proposed search terms and the identities of custodians, and the custodial and non-custodial electronic sources from which ESI will be collected and searched.

## 5.      TECHNOLOGY-ASSISTED REVIEW

5.1     If a Producing Party intends to utilize Technology-Assisted Review (TAR) for the purpose of identifying or culling the documents to be reviewed or produced, this intention must be disclosed prior to any such use and with ample time for the parties to meet and confer as to the technology to be used and come to an agreement on the terms

of its use, including the processes to be utilized, the scope of review, and sampling after commencement of the review to ensure effectiveness and accuracy.

      5.2    Email Thread Suppression.  Email threads are email communications that contain prior or lesser-included email communications. A most inclusive email thread is one that contains all of the prior or lesser-included emails and attachments, including each branch of the email thread.  The Producing Party need only produce the most inclusive email thread, but shall, upon request, also produce all prior or lesser included e-mail threads that were collected and identified as responsive and not privileged.  If a Producing Party does not separately produce lesser-included emails in an email thread upon request: (1) the Receiving Party may disclose the document containing the email thread to any person who is a party to any email communication in the document, notwithstanding  the designation of the document as "Confidential", "Confidential Health Information", or "Highly Confidential – Attorneys' Eyes Only" under the protective order in this case, although any material designated "Confidential", "Confidential Health Information", or "Highly Confidential – Attorneys' Eyes Only" that the person shown the email did not actually receive shall be treated consistent with the protective order in this case, including by redacting later-in-time emails if necessary; and (2) any person who is a party to any email in the document may authenticate all of the email chain that they personally sent or received, but not necessarily the portions of the email chain that they did not receive.

# 6.  **PRODUCTION FORMAT AND PROCESSING SPECIFICATIONS**

6.1  <u>Specifications</u>: The Parties will produce Documents according to the specifications provided in this Order and Exhibit A hereto. The Parties agree to meet and confer in good faith if any of the technological specifications set forth in this Order or Exhibit A result in unforeseen technological issues. The Parties agree not to intentionally degrade the searchability of Documents as part of the Document production process.

6.2  <u>De-Duplication</u>: The Parties may use reasonable, good faith efforts to avoid the production of exact duplicate Documents. The Parties agree that production of Documents globally de-duplicated to remove exact duplicate Documents will constitute production of Documents as maintained in the ordinary course of business provided that a single copy of the responsive Document is produced. Near-duplicate or otherwise nonexact duplicate responsive Documents will be produced. No Party may eliminate duplicate Documents by manual review. Exact duplicates will be defined as Documents with exact MD5 or SHA1 hash values. Where any such Documents have attachments, hash values must be identical for both the Document-plus-attachment(s) (including associated Metadata) as well as for any attachment (including associated Metadata) standing alone. For email, the MD5 or SHA1 hash values should be calculated at the family level and include the full body of any and all attachments as well as the "TO," "FROM," "CC," "BCC," "Date Sent," "Date Received," "Date Created," and "Date Modified" values in that calculation. De-duplication should be done across the entire collection (*i.e.*, global level). When the Producing Party is globally de-duplicating across custodians, the Producing Party must populate a field of Metadata that identifies each custodian who had a copy of

8

the produced Document (the "Duplicate Custodian" field) in addition to a separate field identifying the custodian whose Document is produced (the "DeDuplicated Custodian" field).

6.3     <u>Documents to Be Produced as Images</u>: With the exception of documents identified in paragraph 6.4, all Documents shall be produced as single-page, 1-Bit Group IV, 300 DPI TIFF images.

6.4     <u>Documents to Be Produced Natively</u>:

(a) The Parties agree to produce Excel spreadsheets and other similar spreadsheet type files in Native Format, with the exception that any spreadsheet that requires redaction may be produced as a TIFF image, consistent with the format set forth in paragraph 7.3. The Parties further agree to meet and confer to consider reasonable requests to produce any such Documents with native redactions or in another format that allows manipulation of the data (i.e., searching and sorting). The native file's extracted text will also be produced, and OCR will be provided.

(b) The Parties agree to produce Microsoft PowerPoint™ slides and other similar presentation type files in Native Format, with the exception that any presentation slides that require redaction will be produced in TIFF format only, consistent with the format set forth in paragraph 7.3. The native file's extracted text will also be produced, and OCR will be produced.

(c) The Parties agree to produce audio, video, or other multimedia audio/visual files (e.g. .wav, .mpeg, and .avi) in Native Format. No extracted or OCR text will be provided for these natively produced files.

(d) The production Load Files must contain a link to the produced Native Format files as specified in the "NativeLink" Metadata field described in Exhibit A. Each electronic file produced in Native Format will be assigned a unique Bates number as set forth in paragraph 5.8, and for each a single page slipsheet branded with this unique Bates number, the phrase "PRODUCED IN NATIVE FORMAT" (or similar language), and the corresponding confidentiality designation under the Protective Order will be produced. No Party may attach to any pleading or any correspondence addressed to the Court or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy of any produced Native Format Document without ensuring that either the corresponding placeholder slipsheet is attached to the Document or the corresponding Bates number and confidentiality legend, as designated by the Producing Party, appears on the Document.

(e) Documents produced in Native Format will be produced with all Metadata fields in Exhibit A to the extent reasonably feasible. Metadata and Extracted Text taken from natively produced files will be provided at a Document level. There will be one text file per Document, using the same name as the beginning Bates number (Document ID) of the Document. The extracted text file for a Document will reside in a folder titled "TEXT." The text file associated with any redacted Document will exclude redacted text.

(f) If production in Native Format is necessary to decipher the meaning, context, or content of a Document produced in a different format, including a Document containing redactions, the Producing Party will honor a reasonable written request made in good faith and produce the Document in Native Format (with redactions as needed) **within 14 days**.

If the Producing Party is unable or unwilling to do so, the Parties will meet and confer to resolve the issue or raise it with the Court, as necessary.

6.5     Documents Produced in Other Actions:

(a) Notwithstanding any other provision of this Order, any Document that was originally produced in the Other Direct Purchaser Cases or Other EpiPen Cases (as defined in the Stipulated Protective Order) and that is subsequently reproduced in this Action (as contemplated by the Parties' Rule 26(f) Report) will be produced in the same format as in the original action, unless otherwise agreed to by the Parties.  Except for the obligations set forth in 6.4(f), above, nothing in this Order requires Parties to alter the format of any such Document.

(b) To the extent reasonably feasible, Documents previously produced in the Other Direct Purchaser Cases or Other EpiPen Cases (as defined in the Stipulated Protective Order) will be produced in a manner that facilitates the cross-referencing of any new Bates numbering with the Bates numbering originally assigned to the Documents when they were produced in the other identified cases.  This includes providing cross-reference tables to the extent such tables already exist or can reasonably be generated using automated means. A Producing Party will also provide cross-referencing information for specified Documents in response to a reasonable request.

6.6     Structured Data: To the extent a response to discovery requires production of Structured Data, in advance of producing such Structured Data, the Parties agree to meet and confer regarding the content and format of the production, including discussion of the most appropriate data extraction and cost-effective production format.

6.7 <u>Unitization</u>: If a Document is more than one page, to the extent possible, the unitization of the Document and any attachments or affixed notes will be maintained as it existed in the ordinary course of business when collected by the Producing Party. For example, distinct Documents should not be merged into a single record and a single Document should not be split into multiple records. Documents stored in a binder, folder, or similar container will be produced in the same order as they appear therein. Similarly, pages that are stapled or clipped will be produced as a single Document and not multiple one-page Documents. Electronic documents attached to an email, or electronic and hard-copy documents attached or appended to a hard-copy document, are to be produced contemporaneously and sequentially immediately after the parent document. Attachments will immediately follow the production number(s) for the parent document.

6.8 <u>Bates Numbers and Confidentiality Designations for TIFF Images</u>: Each page of a Document produced in TIFF file format will have a Bates number electronically "burned" onto the image at a place on the Document that does not obscure, conceal, or interfere with any information originally appearing on the Document. Bates numbers should not be included in the extracted text of Documents. Bates numbers and/or confidentiality branding may be included in the extracted text of (a) redacted Documents, since the OCR process may be performed after the confidentiality branding and Bates numbers have been stamped onto redacted Documents and (b) reproductions of Documents that have been previously produced, whether in this Action or any other litigation. The Bates number for each Document will be created so as to identify the Producing Party. To that end, each Party's Bates numbers will have unique identifying prefixes. If a Document

is produced subject to a claim that it is Confidential or Highly Confidential – Attorneys' Eyes Only under the Protective Order, each page of the Document will have the appropriate confidentiality designation electronically "burned" onto the image at a place on the Document that does not obscure, conceal, or interfere with any information originally appearing on the Document.

      6.9   <u>Metadata Fields and Processing</u>: The Parties will not remove any Metadata from any Document prior to its production and will produce Documents with, at least, all agreed upon Metadata fields identified in Exhibit A to the extent reasonably available. However, the Parties are not obligated to manually populate any of the fields in Exhibit A, with the exception of the following, which must always be populated: (a) BegBates, (b) EndBates, (c) Custodian or Source, (d) Page Count, (e) Production Volume, and (f) Confidentiality. Additionally, the Parties must populate the following fields in Exhibit A if applicable: (a) BegAttach, (b) EndAttach, (c) MD5 or SHA1 Hash Value, and (d) – Duplicate Custodian. Metadata identified in Exhibit A will be provided in a Concordance format delimited file as outlined in Exhibit A. With the exception of the fields which the parties have agreed to manually populate as noted above, nothing herein will require a Producing Party to create or produce Metadata that does not exist in the data as kept in the ordinary course of business or is not reasonably or technically accessible. Unless otherwise specified, by producing Metadata, the Producing Party affirms that such Metadata came from its records, with the exception of the vendor-manually populated fields outlined above.

      6.10  <u>Production Media</u>: The Producing Party will produce Document images,

Native Format files, Load Files, and Metadata via hard drives (with standard PC compatible interface), CDs, DVDs, secure FTP, or other mutually agreeable media ("Production Media"). Productions made via FTP or electronic transfer are not required to be supplemented with hard media containing the same Documents. Each piece of Production Media will include a unique identifying label including the following information: (a) Name of Litigation and its case number; (b) Name of the Producing Party, (c) the date of the production, (d) production volume number, and (e) the Bates number ranges of the Documents in that production. To the extent that the Production Media includes any Confidential Information protected under any Protective Order entered by the Court, the label on such Production Media will indicate that the Production Media includes information so designated. Further, any replacement Production Media will cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates number range that is being replaced. All Production Media that is capable of write protection should be write-protected before production. All Production Media may be encrypted, with the Producing Party to provide a decryption key at the time of production.

6.11   _Technical Processing Problems_: If a member of a Document family that has otherwise been determined to be responsive cannot technically be processed (e.g., unsupported file format, file corruption, inaccessible password-protected Document, technical issue), those technical problems will be identified and disclosed to the Requesting Party by production of a Bates numbered slipsheet that states "Technical issue—file cannot be processed" (or similar language). The associated Metadata for the file with the technical problem will be produced if technically possible and reasonably

14

feasible. The Producing Party will also create a Metadata field entitled "Technical Issue" and populate it for every document with a technical problem.

6.12   <u>Time</u>: When processing Documents, UTC should be selected as the time zone. When a Metadata field includes a date and/or time, it will be provided in the following format: mm/dd/yyyy hh:mm:ss.

## 7.   <u>CONFIDENTIALITY, PRIVILEGE, AND REDACTIONS</u>

7.1   The confidentiality of documents will be governed by the **Protective Order, ECF No. 154, entered** in this Action.

7.2   <u>Privilege Logs</u>: Privilege logs are required to the extent required by the Stipulated Protected Order.

7.3   <u>Production of Redacted Documents</u>: To the extent that any image file contains redacted information, the portion of the redacted text will be clearly identified on the face of the TIFF image, either by masking the redacted content with electronic highlighting in black or through the use of redaction boxes. **Except for certain documents, reports and data produced as part of the parties' agreed-upon initial production which contain relevancy redactions that were applied when those materials were produced originally as set forth in paragraph 7.4,** the label "Redacted for privilege" must appear on the face of the redacted portion of the TIFF image.  If providing the reason for the redaction is prohibited by applicable law, the label "Redacted" must appear on the face of the redacted portion of the TIFF image. The redacted TIFF image must be produced in accordance with the image load file specifications in Exhibit A, and any other provisions for the production of TIFF images

contained herein. The alternate production format of any document not produced in native format because of redactions must show all codes, show tracked changes and comments, reveal any hidden fields and/or columns, and reveal any speaker notes.  To the extent that a Document is redacted, OCR text files for such a document need not contain text for redacted portions. To that extent that any Native File contains redacted information, the producing party must either apply the redactions directly on the Native File itself or, for documents other than Excel or other spreadsheet-type files, convert that file to TIFF format and produce it with the necessary redactions.

7.4    **Relevance Redactions: Except for certain documents, reports and data produced as part of the parties' agreed-upon initial production which contain relevancy redactions that were applied when those materials were produced originally,** *see* **ECF No. 150 at 1; ECF No. 145 at 13-16, 20, a Producing Party may not redact for relevance.**

## 8.    PRIOR ORDERS

8.1    **All prior consistent orders remain in full force and effect.**

## 9.    REMEDIES

9.1    **Failure to comply with any provision of Order or any other prior consistent order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses,**

**testimony, exhibits, and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.**

Dated: April ___20___, 2021              _____*s/ Tony N. Leung*_____
                                          Tony N. Leung
                                          United States Magistrate Judge
                                          District of Minnesota


                                          *In re: EpiPen Direct Purchaser Litigation*
                                          Case No. 20-cv-827 (ECT/TNL)

**EXHIBIT A**

1. **COVER LETTER**

   A cover letter will accompany each production. The letter will (i) identify all accompanying media (hard drive, thumb drive, DVD, CD, secure FTP), (ii) identify each production on such media by assigning a Production Volume name or number, (iii) indicate whether any material in the production has been designated as "Confidential," "Highly Confidential – Attorneys' Eyes Only", or "Confidential Health Information", under the Protective Order, and (iv) list the Bates range for the Documents produced in each volume.

2. **PRODUCTION LOAD FILES**

   Two Load files will accompany all productions of paper Documents and ESI.

   - The first will be a Metadata import file with a .DAT file extension, in Concordance format delimited file, including ASCII 020 and 254 delimiters for column break and text qualifier, and new line as ASCII 174, that contains the agreed upon Metadata fields in UTF-8 encoding. The first line will be the header with field names, and each subsequent line will contain the fielded data for each Document.
   - The second will be an image load file containing the Document break instructions for the image base. The acceptable formats for the cross-reference files are .lfp and .opt.

3. **IMAGES**

   - Produce Documents in Single Page Group IV TIFF.
   - Image Resolution of at least 300 DPI.
   - Images may be produced in black and white.
   - If a Party reasonably believes that a Document originally produced in black and white needs to be produced in color, it may request a color version from the Producing Party. To the extent the original Document was in color, the Producing Party will honor reasonable requests made in good faith for either the production of the original Document for inspection and copying or production of a color JPEG file image of the Document(s) **within 14 days**.
   - File Naming Convention: Match Bates Number of the page.
   - Insert placeholder image for files produced in Native Format.
   - Insert placeholder image for unprocessable technical-issue family members.

4. **FULL TEXT EXTRACTION/OCR**

   - Where available, produce the native extracted text for all file types (redacted text will not be produced). In the event that a Document is redacted, the Parties agree that the native version need not be produced, full text may be replaced with OCR

text that excludes the redacted material and Metadata fields may be excluded if they contain redactable information (including Subject and FileName).

- Production format: Single text file for each Document, not one text file per page. The relative path to this text file should be populated in the "Full Text" field listed in section 6 below.
- File Naming Convention: Match Beg Bates Number.

## 5.    ESI (AND PAPER TO THE EXTENT APPLICABLE) PRODUCTION METADATA FIELDS

Parties should produce the following metadata fields for each produced Document, to the extent the fields are reasonably available.

- BegBates: Beginning Bates Number.
- EndBates: Ending Bates Number.
- BegAttach: Beginning Bates number of the first Document in attachment range in a Document family range. Documents that are part of Document families, *i.e.,* containing parents and attachments should receive a value.
- EndAttach: Ending Bates number of the last Document in attachment range in a Document family range. Documents that are part of Document families, *i.e.,* containing parents or attachments, should receive a value.
- AttachmentCount: Populated for Email parent records and indicates the number of attachments that constitute the whole family.
- Custodian or Source: Name of the Custodian of the Document produced, to the extent reasonable and technically available. If the Document was collected from a centralized source, the Custodian field will reference that centralized source.
- Duplicate Custodian: DeDuplicated Custodian field identifying any and all unique custodians in whose files an exact duplicate Document was found.
- FileName: Filename of the original source ESI.
- NativeLink: Relative path and filename to the produced Native Format file.
- Subject: Subject line extracted from an Email message or calendar entry.
- Title: Title field extracted from the Metadata of a non-Email Document.
- Importance: Email importance flag, to the extent reasonably and technically available.
- Author: Author field extracted from the Metadata of a non-Email Document.
- From: From field extracted from an Email message.
- To: To or Recipient field extracted from an Email message.
- Cc: CC or Carbon Copy field extracted from an Email message.
- BCC: BCC or Blind Carbon Copy field extracted from an Email message.
- DateSent: Sent date of an Email message (mm/dd/yyyy format).
- TimeSent: Time of an Email message (hh:mm:ss format).
- DateReceived: Received date of an Email message (mm/dd/yyyy format).

- TimeReceived: Received time of an Email message (hh:mm:ss format).
- DateAccessed: Date of last access (mm/dd/yyyy format)
- Time Accessed Time of last access (hh:mm:ss format)
- DateCreated: Creation date of a file (mm/dd/yyyy format).
- TimeCreated: Creation time of a file (hh:mm:ss format).
- DateLastModified: Last modification date and time (mm/dd/yyyy format).
- TimeLastModified: Last modification time (hh:mm:ss format).
- E-Last Modified By: Name of user making the last file modification
- File Extension: File extension of Document (.msg, .doc, .xls, etc.).
- File Size: File size in kilobytes of a native document.
- File Path: Full path to the file at its original location.
- Extracted Text Size: Extracted text file size in kilobytes.
- Full Text: Relative file path to the full text/OCR File.
- Confidentiality: "Confidential" or "Highly Confidential," if a Document has been so designated under the Protective Order; otherwise, blank.
- Message-ID: The Outlook Message ID assigned by the Outlook mail server, if applicable.
- Foreign Language: Yes/No field for Documents produced in a foreign language.
- Hash Value: MD5 or SHA1 hash of the Document.
- Page Count: The number of pages in the file.
- Production Volume: Production volume name or number.
- Redaction: Yes/No field indicating whether a document contains redactions.
- Technical Issue: Yes/No field indicating that document has a technical problem.

## 6.   **De-NISTing**

Common system files defined by the NIST library (http://www.nsrl.nist.gov/) need not be produced.