UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: EpiPen Direct Purchaser Litigation

File No. 20-cv-0827 (ECT/JFD)

THIS DOCUMENT RELATES TO:
ALL ACTIONS

**OPINION AND ORDER**

Noah Silverman, Bruce E. Gerstein, Jonathan M. Gerstein, Samuel E. Bonderoff, and Joseph Opper, Garwin Gerstein & Fisher LLP, New York, NY; David F. Sorenson, Caitlin G. Coslett, and Andrew C. Curley, Berger Montague PC, Philadelphia, PA; E. Michelle Drake, Berger & Montague PC, Minneapolis, MN; David S. Golub and Steven Bloch, Silver Golub & Teitell LLP, Stamford, CT; Susan C. Segura, David C. Raphael, Jr., and Erin R. Leger, Smith Segura & Raphael, LLP, Alexandria, LA; Russell Chorush, Christopher M. First, and Eric Enger, Heim Payne & Chorush LLP, Houston, TX; Joseph T. Lukens and Peter Kohn, Faruqi & Faruqi, LLP, Philadelphia, PA; Stuart Des Roches, Andrew Kelly, Amanda Leah Hass, Chris Letter, Dan Chiorean, and Thomas Maas, Odom & Des Roches, LLC, New Orleans, LA, for Plaintiffs Rochester Drug Co-Operative, Inc., and Dakota Drug, Inc.

Adam K. Levin, Carolyn A. DeLone, Christine A. Sifferman, Christopher Fitzpatrick, Devin Urness, Elizabeth Jose, Justin Bernick, Charles A. Loughlin, David M. Foster, and Michael D. Gendall, Hogan Lovells US LLP, Washington, DC; Peter H. Walsh and Anthony Ufkin, Hogan Lovells US LLP, Minneapolis, MN; Brittany C. Armour, Hogan Lovells US LLP, Philadelphia, PA; Katherine Booth Wellington, Hogan Lovells US LLP, Boston, MA; and Brian C. Fries, Carrie E. Josserand, Lathrop GPM LLP, Kansas City, MO; and Jason Johnson, Lathrop GPM LLP, Minneapolis, MN, for Defendants Mylan Inc. and Mylan Specialty L.P.

Craig D. Singer, Daniel M. Dockery, Enu A. Mainigi, David Bassali, Dylan McDevitt, Lori Jo Interlicchio, McKayla Stokes, Raymond Kennon Poteat III, Annie Showalter, Ashley Wall Hardin, and Atticus DeProspo, Williams & Connolly LLP, Washington, DC, and John W. Ursu and Isaac B. Hall, Faegre Drinker Biddle & Reath LLP, Minneapolis, MN, for Defendants Caremark PCS Health LLC, Caremark LLC, Caremark Rx LLC, and CVS Caremark Part D Services, LLC.

Donald G. Heeman, Jessica J. Nelson, and Randi J. Winter, Spencer Fane LLP, Minneapolis, MN; Jonathan Gordon Cooper, Michael John Lyle, Eric Christopher Lyttle, and Samuel Johnson, Nicholas Inns, Michael Benjamin Soyfer, Michael Chesley Smith, Quinn Emanuel Urquhart & Sullivan LLP, Washington, DC, and Ellison Ward Merkel,

Quinn Emanuel Urquhart & Sullivan LLP, New York, NY, for Defendants Express Scripts Inc. and Medco Health Solutions Inc.

Kadee Jo Anderson and Andrew Glasnovich, Stinson LLP, Minneapolis, MN; Elizabeth Broadway Brown, David Andrew Hatchett, Bradley Harder, and Jordan Elise Edwards, Alston & Bird LLP, Atlanta, GA; Brian David Boone and Brandon C.E. Springer, Alston & Bird LLP, Charlotte, NC, for Defendants OptumRX Inc. and United Healthcare, Inc.

---

Plaintiffs Rochester Drug Co-Operative, Inc., and Dakota Drug, Inc., are drug wholesalers. On behalf of a proposed class, Plaintiffs claim that Defendants Mylan Inc. and Mylan Specialty L.P. (collectively, "Mylan"), the manufacturers of a device called the "EpiPen,"[1] paid bribes and kickbacks to a group of pharmacy benefit managers (the "PBM Defendants")[2] to ensure that Mylan could raise the price of the EpiPen with impunity while also keeping a monopoly share of the market. In doing so, Plaintiffs claim, all Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and Mylan violated the Sherman Antitrust Act, 15 U.S.C. § 2.

---

[1]    The term "EpiPen" refers collectively to a group of Mylan products that encompasses the EpiPen, EpiPen Jr., EpiPen 2-Pak, and EpiPen Jr. 2-Pak. *See* First Amended and Consolidated Class Action Complaint ("1st Am. Compl.") [ECF No. 271] ¶ 1. Auto-injector devices "allow a patient to quickly self-administer a prescribed amount of the drug epinephrine through a spring-loaded needle." *Id.* ¶¶ 2, 42–43. Epinephrine auto-injectors like the EpiPen are used as "an emergency treatment for severe allergic reactions." *Id.*

[2]    The PBM Defendants are: CaremarkPCS Health, L.L.C., Caremark, L.L.C., Caremark Part D Services, L.L.C., Caremark Rx, L.L.C., Express Scripts, Inc., Medco Health Solutions, Inc., and Optum Rx, Inc. The case's docket also identifies United Healthcare, Inc. as an active party, but this is a mistake. United Healthcare, Inc. was dismissed. Opinion and Order [ECF No. 414] at 4 n.4, 23–28. The Clerk will be directed to correct the docket to reflect that United Healthcare, Inc. is no longer a party.

Defendants seek partial judgment on the pleadings under Federal Rule of Civil Procedure 12(c) with respect to Plaintiffs' RICO (Count I) and RICO conspiracy (Count II) claims.  Specifically, Defendants seek judgment to the extent these claims rely on statutes of California, Rhode Island, New Jersey, Missouri, Pennsylvania, Illinois, Virginia, and Texas as direct RICO predicate acts or as RICO predicate acts under the Travel Act.  Defendants' motion will be granted in part and denied in part.  Plaintiffs cannot plausibly allege a RICO predicate act under California Penal Code § 641.3 because the statute does not reach conduct by business organizations.  Plaintiffs have not plausibly pleaded a valid RICO predicate act under Texas Penal Code § 32.43 as to Defendant OptumRx because Plaintiffs do not allege facts plausibly showing that OptumRx engaged in any Texas-based conduct.  Defendants' motion will be denied in all other respects.

## I

A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standard as a motion to dismiss under Rule 12(b)(6).  *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted).  Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  The complaint must "state a claim to relief that is plausible on its face."  *Id.* at 570.  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

This is Defendants' third Rule 12 motion.[3]  Though Plaintiffs criticize Defendants for taking "a third bite at the apple," Pls.' Mem. in Opp'n [ECF No. 643] at 8,[4] Plaintiffs identify no legal rule that might make Defendants' motion improper, and the motion seems procedurally proper and an apt fit for Defendants' purely legal arguments.  Rule 12(c) says that "a party may move for judgment on the pleadings" "[a]fter the pleadings are closed— but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  Here, not only are the pleadings closed in the sense that Defendants have answered; the deadline to amend pleadings expired roughly nineteen months ago.  *See* Pretrial Scheduling Order [ECF No. 150] at 3; First Am. Pretrial Scheduling Order [ECF No. 370] at 4; Order [ECF No. 268] at 4.  And, as the leading treatise explains, a motion for judgment on the pleadings "has utility when … only questions of law remain to be decided by the district court," such as when "the sole question is the applicability or interpretation of a statutory provision."  5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1367 (3d ed. Apr.

---

[3]     This order assumes familiarity with the orders addressing the two previous Rule 12 motions, ECF No. 125 (*In re: EpiPen Direct Purchaser Litig.*, No. 20-cv-0827 (ECT/TNL), 2021 WL 147166 (D. Minn. Jan. 15, 2021)), and ECF No. 414 (*In re: EpiPen Direct Purchaser Litig.*, No. 20-cv-0827 (ECT/JFD), 2022 WL 1017770 (D. Minn. Apr. 5, 2022)).

[4]     Unless noted otherwise, citations are to ECF pagination (appearing at the top, right corner of each page) and not to a document's original pagination.

4

2022 Update).   That is what we have here.   Defendants' motion implicates primarily statutory interpretation questions.

II

A

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in … interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  A party who violates this provision faces both criminal and civil consequences.  *See id.* §§ 1963 (providing for criminal penalties), 1964(c) (authorizing a private civil action).  To establish a civil RICO claim, a plaintiff must show that the defendant "engaged in '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *H & Q Props., Inc. v. Doll*, 793 F.3d 852, 856 (8th Cir. 2015) (quoting *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009)).  "A pattern is shown through two or more related acts of racketeering activity that amount to or pose a threat of criminal activity."  *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 356 (8th Cir. 2011) (quoting *Nitro Distrib.*, 565 F.3d at 428).  In RICO parlance, these are called "predicate acts," *id.*, and the statute provides an "exhaustive list" of activities that qualify, *Beck v. Prupis*, 529 U.S. 494, 497 n.2 (2000); *see* 18 U.S.C. § 1961(1).

In their operative complaint, Plaintiffs allege violations of sixteen state bribery statutes as direct RICO predicate acts, 1st Am. Compl. ¶¶ 192–208, and violations of the statutes of these and another four other states as RICO predicate acts through the Travel

5

Act, *id.* ¶¶ 209–28.   However, Plaintiffs narrowed their predicate act offenses during discovery to eight state statutes.   The following chart depicts what remains:

| State | Statute | Mylan | Caremark | Express Scripts | OptumRx |
|---|---|---|---|---|---|
| California | Cal. Pen. § 641.3 | Subject to Motion | Subject to Motion | Subject to Motion | Subject to Motion |
| Rhode Island | R.I. Gen. Laws §§ 11-7-3 & 11-7-4 | Subject to Motion | Subject to Motion | Abandoned | Abandoned |
| New Jersey | N.J.S.A. § 2C:21-10 | Subject to Motion | Subject to Motion | Subject to Motion | Subject to Motion |
| Missouri | V.A.M.S. §§ 570.150.1(1) & 570.150.1(3) | Subject to Motion | Subject to Motion | Subject to Motion | Abandoned |
| Pennsylvania | 18 Pa. C.S.A. § 4108 | Subject to Motion | Subject to Motion | Subject to Motion | Subject to Motion |
| Illinois | 720 I.L.C.S. §§ 5/29A-1 & 5/29A-2 | Subject to Motion | Subject to Motion | Subject to Motion | Abandoned |
| Virginia | Va. Code Ann. § 18.2-444 | Subject to Motion | Subject to Motion | Abandoned | Abandoned |
| Texas | Tex. Penal Code § 32.43 | Subject to Motion | Subject to Motion | Abandoned | Subject to Motion |

*See* ECF No. 611 at 1–2; Defs.' Mem. in Supp. [ECF No. 608] at 9–10; ECF No. 608-1; Pls.' Mem. in Opp'n at 9 n.1.  Defendants' motion challenges the plausibility of Plaintiffs' allegations with respect to each of these statutes.  *See* First Am. Compl. ¶¶ 192–94, 196, 200, 206–07 (alleging violations of bribery statutes in California, New Jersey, Missouri, Illinois, Rhode Island, and Texas); *id.* ¶¶ 209–10, 212, 217, 222, 224–25, 228 (alleging violation of the federal Travel Act through the violation of bribery statutes in California,

6

New Jersey, Missouri, Pennsylvania, Illinois, Virginia, Rhode Island, and Texas).  To be clear, if Plaintiffs' allegations concerning any one bribery statute are implausible, then Plaintiffs' claims in both categories fail to the extent the claims rely on that statute.

B

Plaintiffs advance a threshold substantive challenge to Defendants' motion.  RICO defines "racketeering activity" to include "any act or threat involving . . . bribery . . . which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A).  Plaintiffs characterize Defendants' motion as challenging the "chargeability of various statutory commercial bribery offenses under the law of the various states supplying the offense" and argue that "attacking whether a particular offense could be charged by a prosecutor in the state whose law supplies the offense is not a permitted argument in a RICO case."  Pls.' Mem. in Opp'n at 15–16 (emphasis added).  As support for this argument, Plaintiffs rely principally on *United States v. Carrillo*, 229 F.3d 177 (2d Cir. 2000).  There, the Second Circuit explained that "the phrase 'chargeable under State law' does not require that the particular underlying conduct at issue could have been charged under state law, only that such conduct be chargeable as a general matter; i.e., that such conduct is criminal under state law."  *Id.* at 182–83.  And, Plaintiffs point out, the Eighth Circuit quoted this passage from *Carillo* favorably in *United States v. Kehoe*, 310 F.3d 579, 588 (8th Cir. 2002).  Though there is room for misunderstanding, Plaintiffs seem to understand *Carrillo*—and the Eighth Circuit by extension in *Kehoe*—to hold that a civil-RICO plaintiff need not allege facts plausibly showing the elements of an underlying state

7

bribery offense, meaning any challenge to a plaintiff's failure to plead such facts would be pointless.  Pls.' Mem. in Opp'n at 16.

This argument is not persuasive.  (1) *Carrillo* doesn't support it.  *Carrillo* was a criminal case, meaning it could not and did not address civil-RICO pleading requirements. And if anything, *Carrillo*'s core criminal-RICO holdings support the notion that a civil-RICO plaintiff must plead facts plausibly showing each element of any alleged state-law racketeering act.  The relevant issue in *Carrillo* was whether the district court's jury instructions were deficient because they did "not list the state law elements of the constituent racketeering acts."  229 F.3d at 181; *see also id.* at 182 ("The Government, in response, argues that in a RICO prosecution, the court need not charge each element of the state law crimes constituting the predicate racketeering acts.").  The court held that a prosecutor must prove, and a district court generally should instruct the jury regarding, all elements of a predicate state-law offense.  *Id.* at 183–185.  The court drew a line between, on the one hand, Congress's intent not to incorporate state procedural and evidentiary rules into § 1961(1)(A)'s use of "chargeable" and, on the other, the need for a prosecutor to prove each element of a state-law racketeering act.  *Id.* at 183.  The court explained: "Refusal to incorporate state procedural and evidentiary requirements has no logical bearing on the issue whether in a federal RICO prosecution the government must prove the elements of the state law offense that serves as a predicate racketeering act."  *Id.*  The court continued:

> If the conduct proved at trial did not satisfy the elements of the
> offense as defined by state law, a jury could not find that the

> defendant had committed the state law offense charged as a
> predicate act of racketeering. Likewise, even assuming
> evidence from which a jury *could* find a violation of state law,
> if the defendant's acts as found by the jury did not include all
> the essential elements of the state law offense, by definition,
> no state offense would have been found. It is difficult to see
> … how the defendant could be properly convicted if the
> conduct found by the jury did not include all the elements of
> the state offense since RICO requires that the defendant have
> committed predicate acts "chargeable under state law." If a
> district judge failed to charge a jury on the state law elements
> of the crime constituting a racketeering act, neither we nor the
> district judge could know what were the factual determinations
> on which the jury based its verdict. Thus, we would be unable
> to determine what the jury decided the defendant actually did,
> and whether, under the jury's findings, the defendant
> committed the state law offense charged as a racketeering act.

*Id.* at 183–84; *see also id.* at 185 ("The safer course is for trial judges to instruct the jury

on the elements of the predicate offenses."). If anything, *Carrillo*'s emphasis on the need

for proof and instructions regarding all elements of a RICO predicate state-law offense

supports the conclusion that a civil-RICO plaintiff must allege facts plausibly showing

these same elements. If a complaint lacks such allegations, in other words, its sufficiency

may properly be challenged through a Rule 12 motion.

(2) *Kehoe* doesn't support Plaintiffs' argument, either. Like *Carrillo*, *Kehoe* was a

criminal-RICO case that could not have addressed civil-RICO pleading questions. And the

issue in *Kehoe* seems quite distinct from the proof and instruction issues *Carrillo*

addressed. Among other RICO predicate racketeering acts, Kehoe was charged under 18

U.S.C. § 1959 with murdering three individuals in Arkansas. 310 F.3d at 583. The Eighth

Circuit in *Kehoe* cited *Carrillo* in only one section of the opinion analyzing whether

Kehoe's RICO convictions violated the Tenth Amendment. *Id.* at 588. The court held that "[t]he provisions of RICO and § 1959 do not improperly encroach upon state sovereignty to prosecute individuals for state common law crimes, and, thus, do not violate the Tenth Amendment." *Id.* The court explained: "Because a RICO violation is a discrete offense that can be prosecuted separately from its underlying predicate offenses, it necessarily follows that RICO does not bar a state from prosecuting an individual for the state law crimes, which may serve as predicate acts for RICO offenses." *Id.* (citations and quotations omitted). This constitutional holding and every other aspect of *Kehoe* seem far removed from Plaintiffs' argument here.

(3) Plaintiffs' position seems inconsistent with basic pleading standards. Racketeering activity is an essential element of a RICO claim. If a RICO plaintiff seeks to allege racketeering activity through the commission of state statutory offenses, then it only makes sense that the plaintiff must allege facts plausibly showing the commission of those offenses—that is, each element of each identified state statutory offense. Fed. R. Civ. P. 8(a). Accepting Plaintiffs' position would mean that a RICO plaintiff could survive dismissal by pleading merely that a defendant or defendants violated a qualifying state statute, but that would run afoul of the rule that a plaintiff cannot survive dismissal by pleading legal conclusions. *See Smith v. S. Farm Bureau Cas. Ins. Co.*, 18 F.4th 976, 979 (8th Cir. 2021). Not surprisingly, then, persuasive cases hold that a civil RICO plaintiff must plead facts plausibly showing the elements of predicate state statutory racketeering acts and that a failure to do so will subject the complaint to dismissal under Rule 12. *See,*

*e.g.*, *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F. 3d 935, 949 (11th Cir. 1997) ("Therefore, in order to survive a motion to dismiss, a plaintiff must allege facts sufficient to support each of the statutory elements for at least two of the pleaded predicate acts."); *Jurgensen v. Hamalian*, No. 18-cv-01952-MSK-NYW, 2019 WL 3291761, at *5 (D. Colo. Mar. 7, 2019) ("Plaintiff's main claim is that the Defendants' debt collections practice constitutes racketeering under [Colorado] state extortion law, but the court finds there are insufficient facts to support these otherwise conclusory assertions to overcome dismissal."), *report and recommendation adopted*, 2019 WL 2521677 (June 18, 2019); *see also Munsif v. Cassel*, 331 F. App'x 954, 958 (3d Cir. 2009) (affirming Rule 12(b)(6) dismissal of RICO claim because the plaintiff alleged no racketeering acts "amount[ing] to crimes under state or federal law").  Defendants appropriately challenge the sufficiency of Plaintiffs' operative complaint with respect to the alleged state statutory racketeering predicates.

C

1

Plaintiffs allege that all Defendants engaged in predicate acts of racketeering activity in violation of California's commercial bribery statute, California Penal Code § 641.3.  1st Am. Compl. ¶¶ 206, 224.  This statute provides:

> Any employee who solicits, accepts, or agrees to accept money or any thing of value from a person other than his or her employer, other than in trust for the employer, corruptly and without the knowledge or consent of the employer, in return for using or agreeing to use his or her position for the benefit of that other person, and any person who offers or gives an

> employee money or any thing of value under those
> circumstances, is guilty of commercial bribery.

Cal. Penal Code § 641.3(a). The statute defines "Employee" as "an officer, director, agent, trustee, partner, or employee." *Id.* § 641.3(d)(1). In turn, "Employer" is defined as "a corporation, association, organization, trust, partnership, or sole proprietorship." *Id.* § 641.3(d)(2). Under Plaintiffs' theory, the PBM Defendants are employees for purposes of this statute, and their clients are employers.

Defendants argue that the California statute does not reach conduct by corporations, and thus does not apply to the PBM Defendants. Defs.' Mem. in Supp. at 12 (citing *People v. Riley*, 240 Cal. App. 4th 1152, 1162 (2015) ("An element of the offense of commercial bribery is that one of the parties to the illicit transaction must be an employee of the entity alleged to have been injured by the transaction.")). This argument is persuasive in view of the statute's plain text. Unlike the definition of "employer," which includes "corporation," the California legislature opted to omit "corporation" from the definition of "employee." *See* Cal. Penal Code § 641.3(d)(1)–(2). There is more. Though the California Supreme Court has not weighed in on the issue, lower California courts have held that "[o]nly individual employees can violate Penal Code section 641.3." *Valentine v. GEP Cencast, LLC*, No. B251737, 2014 WL 6679097, at *6 (Cal. Dist. Ct. App. Nov. 25, 2014) (unpublished); *Gxp Consultants All., Inc. v. Lacy Constr.*, No. 30-2016-00841623-CU-BC-CJC, 2016 Cal. Super. LEXIS 26997, at *2 (Cal. Super. Ct. Sept. 8, 2016) (finding that the statute did not apply to a "finder's fee" paid to a corporate defendant because the "statute applies to an employee taking a bribe")). The statute uses gendered pronouns. Cal. Penal

12

Code § 641.3 ("Any employee who solicits, accepts, or agrees to accept money or any thing of value from a person other than *his or her* employer . . . ."). Interpreting other statutes, California courts have understood gendered pronouns like these to refer to natural persons. *Comparetto v. Allstate Ins. Co.*, No. LA CV11-09206 JAK, 2014 WL 11514474, at *14–15 (C.D. Cal. July 24, 2014). It also is noteworthy that no case has been cited or located charging a business organization as an "employee" under California Penal Code § 641.3 or using the statute as a RICO predicate act against a corporation in this way. In contrast, there are several cases applying § 641.3 to individual defendants. *See People v. Riley*, 240 Cal. App. 4th 1152, 193 Cal. Rptr. 3d 218 (2015); *People v. Artykov*, No. A154379, 2020 WL 6341688 (Cal. Ct. App. Oct. 29, 2020); *People v. Sanchez*, No. H042628, 2017 WL 1967794 (Cal. Ct. App. May 12, 2017); *People v. Morse*, No. H043571, 2017 WL 5414832 (Cal Ct. App. Nov. 14, 2017); *People v. Cumberworth*, No. F047243, 2006 WL 3549939 (Cal. Ct. App. Dec. 11, 2006).

Plaintiffs advance several arguments seeking to show that this plain-text-driven understanding of § 641.3 is incorrect. Plaintiffs argue that limiting the application of the statute to natural persons would be "an impermissible rewrite, [and] at odds with the definitions contained within its provisions and their context." Pls.' Mem. in Opp'n at 33. They argue that viewing the definitions of "employee" and "employer" in context reveals that "it is obvious that the legislature is seeking to capture the universe of fiduciary-beneficiary dyads, and chose the shorthand of employee-employer to refer to the greater universe." *Id.* Plaintiffs point out that the definition of "employee" includes "agent" and

"trustee."  Cal. Penal Code § 641.3(d)(1).  And Plaintiffs rely on the Restatement to argue that a corporation may be an agent for another corporation, and thus the language of the statute is not limited to natural persons.  Pls.' Mem. in Opp'n at 34–35 (citing Restatement (Third) of Agency § 3.15 cmt. b ("When an agent is itself a corporation or other legal person, its officers, employees, partners, or members who are designated to work on the principal's account are subagents); Restatement (Second) of Trusts § 96(1) ("The extent of the capacity of a corporation to take and hold property in trust is the same as that of a natural person except as limited by law.")).  These arguments might be persuasive if they concerned a less clear or perhaps ambiguous statute.  Section 641.3 isn't that, and it would be a mistake to trust these arguments and adopt Plaintiffs' construction in the face of the California statute's plain meaning.

2

Plaintiffs allege that Mylan and Caremark engaged in predicate acts of racketeering activity by violating Rhode Island General Laws §§ 11-7-3 and 11-7-4.  1st Am. Compl. ¶¶ 196, 212.  Section 11-7-3 of the Rhode Island statute provides:

> No person in public or private employ, or public official shall corruptly accept, or obtain or agree to accept, or attempt to obtain from any person, for himself or herself or any other person, any gift or valuable consideration as an inducement or reward for doing or forbearing to do, or for having done or forborne to do, any act in relation to the business of his or her principal, master, employer, or state, city, or town of which he or she is an official, or for showing or forbearing to show favor or disfavor to any person in relation to the business of his or her principal, master, employer, or state, city, or town of which he or she is an official.

14

R.I. Gen. L. § 11-7-3(a). Mirroring this language, Section 11-7-4 makes it unlawful to "give or offer" any such gift or valuable consideration to a "person in public or private employ, or any public official" under these circumstances. R.I. Gen. L. § 11-7-4(a). Under Plaintiffs' theory of the case, Caremark is a "person in … private employ," R.I. Gen. L. § 11-7-3(a), and Mylan is a "person," *id.*, from whom Caremark received "valuable consideration … as an inducement or reward for favorable formulary placement." 1st Am. Compl. ¶ 196. Though the operative complaint is not specific about the point, it seems that in Plaintiffs' theory Caremark's clients are, to phrase it in the statute's terms, Caremark's "principal[s], master[s]," or perhaps "employer[s]." R.I. Gen. L. § 11-7-4(a).

As with the California statute discussed in the preceding section, Defendants argue that Plaintiffs' Rhode Island-based claims fail because the statutes apply only when an *individual* employee or a public official is bribed. Defs.' Mem. in Supp. at 18–20. Defendants fairly observe that these Rhode Island statutes contain textual signals—for example, the limitation of the statutes' reach to persons "in public or private employ," the statutes' use of gendered pronouns, and the absence of any explicit reference to business organizations—suggesting that the statutes reach only individual conduct. *See* R.I. Gen. L. §§ 11-7-3, 11-7-4.

The Rhode Island statutes' use of the word "person," however, distinguishes them from the California statute and warrants a different result. As a general rule, "the term 'person' … extend[s] to corporations" when construing statutory language. *Cook Cnty., Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 125 (2003). Rhode Island has a statute that is

15

consistent with this rule.  Under Rhode Island General Law § 43-3-6 (as briefed by the parties), "[t]he word 'person' extends to and includes co-partnerships and bodies corporate and politic."  R.I. Gen. L. § 43-3-6.  As corporate entities, Mylan and Caremark are thus "persons" under Rhode Island law and fall within the coverage of Rhode Island General Laws §§ 11-7-3 and 11-7-4.  These statutes, in other words, apply to business organizations that accept, offer, or give a bribe.

This understanding of the Rhode Island statutes finds support in a Rhode Island Supreme Court case.  In *Barone Lumber Co. v. Sowden*, the court  applied § 43-3-6 to a statute that read as follows:

> If the *person* to whom the estate is taxed be a resident of this state, the collector shall, in addition to the foregoing, cause notice of his levy, and of the time and place of sale, to be left at *his* last and usual place of abode, or personally served on *him*, at least twenty days previous to the day of sale.

51 R.I. 166, 153 A. 308, 310 (1931) (emphasis added).  Though this statute contained gendered pronouns, and though the court noted that "[a] corporation can hardly be said to have a place of abode," the court nevertheless held that a corporation may be considered a person for purposes of the statute.  *Id.  Barone Lumber* supports Plaintiffs' interpretation of the Rhode Island bribery statutes.[5]

---

[5]      *Barone Lumber* led us to stumble on an odd issue with respect to § 43-3-6.  In their briefing, the parties relied on the then-published version of § 43-3-6.  As noted, that version seems mandatory.  It says: "The word 'person' extends to and includes co-partnerships and bodies corporate and politic."  However, the version of § 43-3-6 applied in *Barone Lumber* was permissive.  It read: "The word 'person' *may* be construed to extend to and include co[-]partnerships and bodies corporate and politic."  *See Barone Lumber*, 153 A. at 310 (emphasis added).  After reading *Barone Lumber* and noting this mandatory-versus-

16

Defendants argue that an advisory opinion, *In re Advisory Opinion to the House of Representatives*, 576 A.2d 1371 (R.I. 1990), supports the conclusion that Rhode Island's bribery statutes do not apply to business organizations, but this is not persuasive.  There, the Rhode Island Supreme Court provided an advisory opinion to the Rhode Island House of Representatives regarding "[w]hether the Governor may unilaterally reduce, impound and/or withhold from distribution more than $10 million of funds lawfully appropriated by the General Assembly to the individual cities and towns of the State of Rhode Island." 576 A.2d at 1371.  The Rhode Island Governor had approved the impoundment over $10 million of an appropriation allocated to cities and towns as general state aid.  *Id.* at 1372–73.  In doing so, the Governor relied on R.I. Gen L. § 35-3-16, which provided that the Governor, "for the purpose of maintaining a balanced budget, shall have the power to reduce or suspend appropriations for any or all departments or subdivisions thereof."  *Id.* at 1372.  As relevant here, the Governor contended that he retained the power to impound funds made directly to municipalities of the state, under the theory that (1) § 35-1-4

---

permissive distinction, we attempted to determine when or why this change was made.  After finding no legislative history, we sought assistance from several sources. These included the Eighth Circuit Library, the First Circuit Library, the Rhode Island State Law Library, and Lexis (which publishes the Rhode Island General Laws), and we are grateful for their time and effort in seeking answers to these questions.  At this time, the best answer appears to be that § 43-3-6 was altered outside of the legislative process by the prior state revisor at some point between 1998 and 1999.  Recognizing the evident impropriety of such an alteration, Lexis has since updated § 43-3-6 with the original language addressed in *Barone Lumber*.  In view of the court's treatment of the statute in that case, and absent more conclusive information regarding this issue, the better answer is that the revision back to the statute's original, permissive language does not change the outcome here.

17

included the word "person" in the legislative definition of "department and agency;" and (2) § 43-3-6 "provides that the word 'person' may be construed to include 'bodies corporate and politic;'" so (3) since municipalities are included within the term "person," they are among the "departments" whose appropriations are subject to reduction or suspension by the Governor under § 35-3-16. *Id.* at 1374. The court rejected this argument because it "ignore[d] the clear and unambiguous language" of § 35-3-16, which "[made] it crystal clear that cities and towns are not, by any stretch of the imagination, 'departments or subdivisions of state government.'" *Id.* The basis of the court's decision, however, was that while § 35-1-4 defined "department and agency," the term used in § 35-3-16 was "departments or subdivisions thereof." *Id.* at 1375. The only clear and sensible meaning of the latter, the court concluded, was one in which the term "departments or subdivisions" was limited to departments of the state government. *Id.* The opposite approach would mean that "any person or entity, public or private, who or which receives appropriated State funds becomes a 'department' of the State government." *Id.* No such conflicting statutory language is present here.

3

Plaintiffs allege that all Defendants engaged in predicate acts of racketeering activity in violation of New Jersey's commercial bribery statute, New Jersey Statute § 2C:21-10. 1st Am. Compl. ¶¶ 192, 209. New Jersey's statute provides: "A person commits a crime if he solicits, accepts or agrees to accept any benefit as consideration for knowingly

18

violating or agreeing to violate a duty of fidelity to which he is subject . . . ."  N.J.S.A. §

2C:21-10.  This statute is nearly identical to Model Penal Code § 224.8.

Relying on *Jaclyn, Inc. v. Edison Bros. Stores, Inc.*, Defendants argue that parties

alleging a violation of the New Jersey statute must "establish that the payments to the agent

were made secretly, *i.e.*, without the knowledge and consent of the principal," and that

Plaintiffs have failed to plausibly allege that the PBM Defendants received payments from

Mylan without the knowledge and consent of their clients.  170 N.J. Super. 334 (Law. Div.

1979).  The *Jaclyn* court, however, applied the former New Jersey commercial bribery

statute, § 2A:170-88, which explicitly included a "knowledge and consent" requirement.

170 N.J. Super. at 350.  Months after the *Jaclyn* decision, in September 1979, New Jersey

Statute § 2C:21-10 became effective, the former commercial bribery statute was repealed,

and the "knowledge and consent" language was eliminated.  N.J.S.A. § 2C:21-10.[6]  As

establishing lack of knowledge and consent is not required under New Jersey's amended

commercial bribery statute, Defendants' motion on this issue will be denied.

### 4

Plaintiffs allege that Mylan, Caremark, and Express Scripts engaged in predicate

acts of racketeering in violation of Missouri Revised Statutes § 570.150.1.  1st Am. Compl.

¶¶ 194, 210.  Noting that Missouri's commercial bribery statute is substantively identical

---

[6]     Defendants also cite as support for their argument a footnote in *Johnson v. Nextel Commc'ns, Inc.*, which relied on the *Jaclyn* case.  No. 07CIV8473GBDKNF, 2017 WL 4326052, at *7 n.8 (S.D.N.Y. Sept. 19, 2017), *aff'd in part, vacated in part, remanded*, 763 F. App'x 53 (2d Cir. 2019).  This citation to a case which, in turn, cites to and relies on a repealed statute does not justify a different result on this issue.

to New Jersey's statute, Defendants argue: "Although Missouri courts do not appear to have considered whether a payment must be secret to qualify as commercial bribery, there is no reason to expect that a court in Missouri would interpret the identical statutory language differently than courts in New Jersey." Defs.' Mem. in Supp. at 16. The logical explanation for this lack of authority, however, is that the sole basis for the "knowledge and consent" requirement in New Jersey was a repealed statute with materially different language than that to which the Missouri statute is now substantively identical. Defendants' motion on this issue will be denied.

5

Plaintiffs claim that all Defendants engaged in predicate acts of racketeering activity in violation of 18 Pennsylvania Criminal Statute § 4108. 1st Am. Compl. ¶ 228. This statute provides:

> An employee, agent or fiduciary commits a misdemeanor of the second degree when, *without the consent of his employer or principal*, he solicits, accepts, or agrees to accept any benefit from another person upon agreement or understanding that such benefit will influence his conduct in relation to the affairs of his employer or principal.

18 Pa. C.S. § 4108(a) (emphasis added).

Defendants argue that Plaintiffs fail to allege lack of consent of a principal—assumed for this motion to be the PBM clients—because "Plaintiffs allege that the PBMs' clients *were* aware of the rebate negotiations and 'delegated' responsibility for conducting those negotiations to the PBMs." Defs.' Mem. in Supp. at 16–17 (citing 1st Am. Compl. ¶ 4). In other words, Defendants say that a client's delegation of negotiating authority to a

20

PBM necessarily means that the client gave "consent" for purposes of § 4108(a) to the price-increase/rebate scheme Plaintiffs allege in their operative complaint.

This argument is not convincing. A principal does not consent to bribery merely by delegating authority to negotiate prices and rebates to an agent. *Cf. United States v. Johns*, 742 F. Supp. 196, 200 (E.D. Pa. 1990). And here, as noted in the order on Defendants' first Rule 12(b)(6) motion, Plaintiffs repeatedly allege that Mylan and the PBM Defendants concealed information from the PBM clients:

> Mylan did not reveal the "true reason for [its] price increases" when it reported them. *Id.* ¶¶ 163–65, 175. The PBM Defendants misleadingly classified payments in order to avoid passing them on to clients, *id.* ¶ 128; placed limitations on the scope of audits that might have revealed the true nature and amount of payments received, *id.* ¶¶ 136–37; and continued to represent to their clients and the public that they were working to secure lower prices, e.g., *id.* ¶¶ 92–96.

ECF No. 125 at 34–35. The First Amended Complaint contains additional concealment allegations beyond those cited in the previous order. *See* 1st Am. Compl. ¶¶ 10, 130–39, 141–42, 145, 164–65, 167–69, 171–72, 177, 184, 186–87, 241, 244. At this judgment-on-the-pleadings stage, these allegations must be accepted as true.

The cases Defendants cite do not justify a different conclusion. Defendants rely on *J.J. White, Inc. v. William A. Graham Co.* for the assertion that "[t]here is no plausible allegation of a violation of § 4108(a) where a defendant accepts payments it is authorized to receive." Defs.' Reply Mem. [ECF No. 649] at 18–19 (citing No. CIV. A. 96-6131, 1997 WL 134896, at *3–4 (E.D. Pa. Mar. 17, 1997)). There, the Eastern District of Pennsylvania dismissed a RICO claim predicated on § 4108(a). *J.J. White*, 1997 WL

134896. The portion cited by Defendants explained that a (now-repealed) statute that directly conflicted with § 4108 would be "construed as an exception to the more general prohibition on commercial bribery in § 4108." *Id.* at *4. Because that separate statute allowed the defendant to accept commissions as an exception to § 4108, the plaintiff could not maintain a claim for commercial bribery. *Id.* Here, Defendants identify no statute or other relevant grant of authority that might override Plaintiffs' allegations and serve as an exception to § 4108's general prohibition on commercial bribery. *J.J. White* is therefore distinguishable. Defendants also cite *Banks v. Kreiner*, No. CIV.A. 87-5703, 1988 WL 9550 (E.D. Pa. Feb. 3, 1988). Defs.' Reply Mem. at 19. But the portion of *Banks* that Defendants quote describes, not that court's holding or reasoning, but an argument advanced by the defendant. *See Banks*, 1988 WL 9550, at *2 ("Defendant Royal thus contends that he was the agent, codefendants were the principal, and violation of the state statute was impossible because all alleged actions were done *with the knowledge of the principal*.") (emphasis added). The defendant's argument on this point was rejected and his motion to dismiss was denied. *Id.* at *2.

6

Plaintiffs claim that Mylan, Caremark, and Express Scripts engaged in predicate acts of racketeering activity in violation of Illinois's commercial bribery statute, 720 ILCS §§ 5/29A-1, 5/29A-2. 1st Am. Compl. ¶¶ 200, 217. Under § 5/29A-1, "[a] person commits commercial bribery when he confers, or offers or agrees to confer, any benefit upon any employee, agent or fiduciary without the consent of the latter's employer or principal, with

intent to influence his conduct in relation to his employer's or principal's affairs." 720 Ill. Comp. Stat. Ann. § 5/29A-1. And under § 5/29A-2, "[a]n employee, agent or fiduciary" who "without consent of his employer or principal … solicits, accepts or agrees to accept any benefit" may also be held criminally liable for commercial bribery. 720 Ill. Comp. Stat. Ann. § 5/29A-2.

As with the Pennsylvania statute, Defendants argue that Plaintiffs fail to allege a plausible claim under the Illinois statutes because (1) the statutes require that a benefit be conferred or received without the consent of an employer or principal, and (2) Plaintiffs allege that the PBMs' clients delegated responsibility for negotiations to the PBMs, *see* 1st Am. Compl. ¶ 4. Defs.' Mem. in Supp. at 17. As briefed, this issue is something of a battle between cases, and the better answer is the Plaintiffs have the better case.

Plaintiffs rely on *Al Maha Trading & Contracting Holding Co. v. W.S. Darley & Co.* for their argument that pleading concealment of a bribery scheme negates any averment of consent in Illinois. Pls.' Mem. in Opp'n at 26 (citing *Al Maha Trading & Contracting Holding Co. v. W.S. Darley & Co.*, No. 12 C 1920, 2014 WL 2459674 (N.D. Ill. June 2, 2014)). While *Al Maha* did not involve 720 ILCS §§ 5/29A-1 and 5/29A-2, it did involve a claim of civil conspiracy to commit bribery and fraud. *Al Maha*, 2014 WL 2459674, at *8. There, responding to the defendants' argument that Al Maha had not alleged an independent bribery cause of action underlying its civil conspiracy claim, the court stated,

> Defendants are incorrect that Al Maha has not alleged an independent cause of action underlying its conspiracy claim. This court has already found that Al Maha has alleged both fraudulent misrepresentation and omission. Additionally, this

23

> court is persuaded that Al Maha's bribery allegations, whether
> based on Illinois' criminal bribery statute or the common law,
> sufficiently plead unlawful acts capable of underlying the
> conspiracy claim.

*Id.* at *9 (internal citations omitted).  The court reached this determination even though Al

Maha (the principal) had authorized its employee to negotiate with the defendant.  *See id.*

at *2–3.  Defendants cite *United States v. Burke*, specifically a footnote within the opinion

that lists the elements of a claim under § 5/29A-2.  2022 WL 1970189, at *34 n.23 (N.D.

Ill. June 6, 2022).  Substantively, *Burke* does not help Defendants because in that case, the

court rejected one defendant's argument "that the City of Chicago consented to his receipt

of compensation for outside employment through [an] ethics ordinance."  *Id.* at *36.  The

bottom line with respect to Illinois is that Plaintiffs have the better argument and authority,

and Defendants' motion in this respect will be denied.

7

Plaintiffs allege Mylan and Caremark engaged in predicate acts of racketeering

activity in violation of Virginia Code § 18.2-444.  1st Am. Compl. ¶ 222.  The statute

provides:

> (1) Any person who gives, offers or promises to an agent,
> employee or servant any gift or gratuity whatever, without the
> knowledge and consent of the principal, employer or master of
> such agent, employee or servant, with intent to influence his
> action to the prejudice of his principal's, employer's or
> master's business; or
>
> (2) An agent, employee or servant who, without the knowledge
> and consent of his principal, employer or master requests or
> accepts a gift or gratuity or a promise to make a gift or to do an
> act beneficial to himself, under an agreement or with an

24

> understanding that he shall act in any particular manner as to
> his principal's, employer's or master's business; . . .
>
> shall be guilty of a Class 3 misdemeanor.

Va. Code Ann. § 18.2-444.

Defendants argue that Plaintiffs cannot plausibly allege the absence of knowledge and consent the statute requires because they separately allege that the PBMs' clients were aware of the PBMs' rate negotiations with Mylan and delegated that responsibility to them. Defs.' Mem. in Supp. at 18 (citing 1st Am. Compl. ¶ 4). As discussed, the delegation of negotiating authority and the acceptance of rebates does not logically or necessarily imply consent to concealed payments. It might be different if a state statute adopted that rule or if a case interpreted a state's bribery statute to say that. But Defendants cite no case or other authority to that effect in Virginia. The case Defendants cite holds only that "when the language of a statute is plain and unambiguous, [the court is] bound by the plain meaning of that language." *Id.* (quoting *Law v. Commonwealth*, 571 S.E.2d 893, 895 (Va. Ct. App. 2002)). Accepting that proposition—and the lack of ambiguity in the Virginia statute—does not explain why Plaintiffs' allegation that the PBMs' clients delegated authority for rebate negotiations means the clients consented to a bribery scheme.

## 8

Plaintiffs allege that Mylan, Caremark, and OptumRx committed predicate acts of racketeering by violating Texas Penal Code § 32.43. 1st Am. Compl. ¶¶ 207, 225. The statute provides:

> (b)  A person who is a fiduciary commits an offense if, without the consent of his beneficiary, he intentionally or knowingly solicits, accepts, or agrees to accept any benefit from another person on agreement or understanding that the benefit will influence the conduct of the fiduciary in relation to the affairs of his beneficiary.

> (c)  A person commits an offense if he offers, confers, or agrees to confer any benefit the acceptance of which is an offense under Subsection (b).

Tex. Penal Code § 32.43(b)–(c).

Defendants advance two arguments in support of their motion with respect to Plaintiffs' claims based on this statute.  First, Defendants (again) argue that Plaintiffs "allege that the PBMs' clients were aware of each PBMs' 'negotiation of rebates with drug makers, including Mylan' and 'delegated' responsibility for rebate negotiations to the PBMs," Defs.' Mem. in Supp. at 21 (quoting 1st Am. Compl. ¶ 4), the implication being that Plaintiffs cannot plausibly allege the absence of consent required by § 32.43.  As support for this argument, Defendants cite *Leblanc v. Lange*, which Defendants say shows that the "statute applies only when a fiduciary acts without the beneficiary's consent."  *Id.* at 21 (citing *Leblanc v. Lange*, 365 S.W.3d 70, 87 (Tex. App. 2011)).  *Leblanc* doesn't say that.  In *Leblanc*, the plaintiff claimed that his former friend, business associate, and attorney breached a fiduciary duty owed to him by representing the plaintiff's counterparty to a settlement agreement.  *Leblanc*, 365 S.W.3d at 73–77.  The portion of *Leblanc* Defendants cite concerned whether the settlement agreement violated § 32.43.  *Id.* at 87.  The Texas Court of Appeals held that § 32.43 did not apply because (1) penal code violations do not give rise to private causes of action, (2) no fiduciary relationship existed

26

between the parties, and (3) there was no evidence that the defendant agreed to accept any benefit from anyone without the consent of the plaintiff because the plaintiff had signed the settlement agreement.  *Id.*  There is no private-right-of-action issue here.  Nor is the existence of a fiduciary duty at issue.  At the hearing on this motion, Defendants stated that their motion assumes that Plaintiffs have sufficiently alleged that a fiduciary relationship exists between the PBMs and their clients.  ECF No. 659 at 14–15.  Finally, nothing here resembles the consent shown in *Leblanc*, where the very agreement at issue was signed by the principal.  Rather, Plaintiffs have plausibly alleged that the PBMs' clients did not know about, and did not consent to, the alleged bribery scheme due to Defendants' concealment.

Second, Defendants argue that Plaintiffs have failed to allege Texas-based conduct by Mylan, Caremark, or OptumRx.  In *McGowan v. State*, the Texas Court of Appeals held "that commercial bribery is a conduct oriented offense, as opposed to a result oriented offense."  938 S.W.2d 732, 735 (Tex. App. 1996), *aff'd sub nom. Weightman v. State*, 975 S.W.2d 621 (Tex. Crim. App. 1998) (citing Tex. Penal Code § 32.43(b)).  There, a Washington-based salesman named McGowan acquired drawings of highly technical machinery parts from his employer and transmitted them to a Texas-based individual, who then wired him money in return.  *Id.* at 734.  After a Texas jury found him guilty of commercial bribery in violation of Texas Penal Code § 32.43, McGowan appealed, arguing that Texas lacked jurisdiction.  *Id.*  The court agreed, finding that "[f]or Texas to have jurisdiction, McGowan must have solicited, accepted or agreed to accept a benefit in Texas."  *Id.* at 735.

Plaintiffs' Caremark-focused allegations satisfy the requirements of *McGowan*. As explained in the order on the first motion to dismiss, Plaintiffs have alleged an adequate connection to the states whose laws they invoke because they alleged that the Defendant entities are headquartered there, and it is reasonable to infer that Defendants took actions to further their alleged scheme at their respective corporate headquarters. *See* ECF No. 125 at 40. Plaintiffs allege that Caremark PCS Health, LLC is headquartered in Texas. 1st Am. Compl. ¶ 19. They also allege that Caremark (including the Texas Caremark entity) solicited, was offered, and accepted payments from Mylan. 1st Am. Compl. ¶¶ 166, 187, 207, 248, 291. These allegations thus differ from *McGowan*, where the employee accepted the benefit beyond Texas's borders. Taking Plaintiffs' factual allegations as true, it is reasonable to infer that a Texas-based Caremark entity solicited, agreed to accept, or accepted Mylan's money at its Texas headquarters. This satisfies the conduct-oriented requirement of Texas Penal Code § 32.43. Accordingly, Defendants' motion will be denied with respect to Mylan and Caremark on this issue.

OptumRx is situated differently. As Plaintiffs themselves noted at the hearing on this motion, they do not allege in the First Amended Complaint that OptumRx or any affiliated entity was headquartered in Texas. *See* ECF No. 659 at 35. They requested that, if required to plead the territorial jurisdictional basis of the Texas-based predicate act with regard to OptumRx, they be given leave to replead. *Id.* They claim that they only became aware during discovery that OptumRx "had a particular individual who was negotiating with Mylan on behalf of OptumRx from a place in Texas." *Id.* This request will not be

granted.  "A court does not abuse its discretion in denying a motion for leave to amend when there are 'compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.'"  *Anderson v. Bank of the West*, 23 F.4th 1056, 1060 (8th Cir. 2022) (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005)).  Here, Plaintiffs already were granted leave to amend—resulting in the operative First Amended Consolidated Class Action Complaint that is the subject of this motion.  ECF Nos. 268, 271.  The deadline to amend pleadings expired roughly nineteen months ago.  *See* Pretrial Scheduling Order [ECF No. 150] at 3; First Am. Pretrial Scheduling Order [ECF No. 370] at 4; Order [ECF No. 268] at 4.  That's a long time.  And Plaintiffs have taken no steps to comply with LR 15.1 or to show in some other reasonably precise way how they might amend their operative complaint to cure this deficiency.  *See Far East Aluminum Works Co. Ltd. v. Viracon, Inc.*, 27 F.4th 1361, 1367 (8th Cir. 2022).

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT** Defendants' Motion for Partial Judgment on the Pleadings [ECF No. 611] is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.    Counts I and II of Plaintiffs' First Amended Consolidated Class Action Complaint are **DISMISSED WITH PREJUDICE** to the extent they rely on the California Penal Code § 641.3 with regard to all Defendants, and to the extent they rely on the Texas

Penal Code § 32.43 with regard to Defendant OptumRx, either as direct RICO predicates or as RICO predicates under the Travel Act (18 U.S.C. § 1952, *et seq.*).

2.      The remainder of Defendants' motion is **DENIED**.

3.      The docket shall be amended to reflect that United Healthcare, Inc. is no longer a party.

Date:  April 10, 2023                                       s/ Eric C. Tostrud
                                                            Eric C. Tostrud
                                                            United States District Court